[1] This action is to recover dividends alleged to have been illegally paid. The appellant filed a claim in the Probate Court of Jasper County, Missouri, against the estate of A. K. Mills, deceased, in the sum of $1850, which claim was allowed by the Probate Court on July 1, 1948. Respondent appealed to the Circuit Court of Jasper County, Missouri, where it was tried and judgment rendered in favor of defendant, respondent here, on the 2d day of December, 1948. From this judgment the plaintiff, below, appeals to this court.
[2] We will refer to appellant as plaintiff and respondent as defendant in this opinion. *Page 139 
[3] Plaintiff's claim, filed in the Probate Court, (omitting the caption and first paragraph) is as follows:
[4] "Cash advances to A. K. Mills, by the Webb City Undertaking Company, a Missouri Corporation as of the following dates and amount, to-wit:
September 3, 1946 $250.00 September 28, 1946, 500.00 February 25, 1947, 300.00 March 1, 1947, 300.00 March 10, 1947, 500.00 -------- $1850.00
[5] "The above amounts were illegally charged on the books of the above corporation as dividend payments, for the following reasons:
[6] "1. At the times of disbursements the total assets per books was less than total Capital Stock outstanding.
[7] "2. Such disbursements were not authorized by Director's Meetings.
[8] "3. Such disbursements were not made equally or in any manner to other stockholders of record.
[9] "4. Directors receiving illegal payment of dividends are liable for such amounts of payments."
[10] Under points and authorities, appellant states five abstract propositions of law but does not, under any of these points, state how the trial court violated these propositions of law or, in fact, whether he did so violate them.
[11] In order to find out what appellant does complain about in the trial of this case, we are forced to look back to his motion for new trial. We find, in this motion, that he complained,
[12] "1. That the Court erred in sustaining objections to portions of Plaintiff's Exhibits 2 and 3, offered to indicate the financial condition of the Corporation of which deceased was principal shareholder.
[13] "2. Because the verdict is against the evidence.
[14] "3. Because the verdict is against the law under the evidence.
[15] "4. Because the verdict is against the greater weight of the credible evidence in the case."
[16] The undisputed facts in this case show that the Webb City Undertaking Company was a corporation, organized under the laws of Missouri, to do an undertaking business in Webb City, Missouri. The date of organization of the corporation is not given but plaintiff's witness testified, on cross-examination, that the corporation had been in existence some twenty years. One of the defendant's witnesses testified that she worked for Mr. Mills, who was the active manager and owner of the corporation, from 1917 until the time of Mills' death on March 30, 1947.
[17] It is undisputed that A. K. Mills organized this corporation for the purpose of carrying on his own private business as an undertaker and was the sole owner of this business. He placed two shares of stock in the name of his son and two in the name of his wife in order to comply with the laws of Missouri in forming the corporation. Mills was the president of the corporation and, from the date of its organization until March 13, 1947, being the date when he sold the business of the Webb City Undertaking Company to one Leigon, carried on the business, signed all of the checks as president, and declared dividends, without having a meeting of the directors or without paying any part of the dividends over to his son or wife, who were members of his family and who owned four shares of the stock in the corporation. There is no contention that the wife and son did not know of the actions of A. K. Mills in so carrying on the business or that they made any objections to the manner in which the corporation's business was handled. It was merely a family affair.
[18] Plaintiff's exhibit 2 was a copy of a registration blank, required to be filed with the State, which was introduced for the sole purpose to show who the officers of the corporation were in 1946.
[19] Plaintiff's exhibit 3, which was a franchise tax report, made in 1947, by the corporation, shows that A. K. Mills was president, A. K. Mills, Jr., vice president *Page 140 
and Mrs. A. K. Mills, secretary and treasurer; that the authorized capital stock of the corporation was $20,000 and the amount of shares subscribed was $20,000. This report showed the market value of total property and assets was $12,345.53, showing a deficit of $8,192.55. This report showed that the paid-up shares of stock was $20,000; that the par value of the stock was $100 per share. This report was admitted by the court for the sole purpose of showing who the officers and stockholders were.
[20] The facts are admitted that, from September 3, 1946, to March 10, 1947, A. K. Mills withdrew $1,850 as dividends; that there were no minutes kept of the meetings of the corporation, and the dividends were not authorized by a director's meeting.
[21] The facts also are admitted that, on March 13, 1947, A. K. Mills sold the Webb City Undertaking Company to one Leigon, who operated the corporation until May 24, 1947; that he received $50,000 for the stock and assets in said corporation.
[22] Defendant's witness, Hattie Sinclair, was asked these questions:
[23] "Q. Now, Miss Hattie, do you remember Mr. Mills selling the business on the 13th of March, 1947? A. Yes, sir.
[24] "Q. And what did he get for it? A. $50,000.00.
[25] "Q. That is right, you are now the administrator of the estate of A. K. Mills, deceased? A. Yes, sir.
[26] "Q. And there was a sum of $50,000.00 deposited in the First National Bank in Kansas City when you took over as administratrix wasn't there? A. The Traders Gate City National Bank. * * *
[27] "Q. Now, no part of that $50,000.00 was divided to any other stockholder, was it? A. No.
[28] "Q. Now, at the time, — you heard these different items read off here, totalling $1850.00, — at the time that Mr. Mills drew that money did the Webb City Undertaking Company owe any debts or owe any creditors? A. The Webb City Undertaking Company never owed any debts * * *.
[29] "Q. Was it the habit of Mr. Mills to take money out that way as he saw fit? A. Whenever he had a little surplus he always declared a dividend.
[30] "Q. Was there some surplus that he took this money? A. Yes, sir."
[31] This witness testified that, on the 13th day of March, 1947, A. K. Mills returned from Kansas City, introduced Mr. Leagin as the new owner of the Webb City Undertaking Company and Mr. Leagin took charge from there on.
[32] The evidence shows that A. K. Mills died March 31, 1947. The evidence further shows that Leagin stayed in charge of the business until some time in May, when Mr. Blanford took over. The witness testified that Blanford took charge of the business the first of June, 1947, and became president of the company and that the witness was, at that time, working for the company.
[33] The testimony fully shows that when Leagin took over the business he had an auditor from Kansas City, named Jones, to make an audit of the business and that the audit was satisfactory.
[34] The witness testified that Mills transferred the business by merely transferring his stock in the corporation. This witness further testified that while Mills operated the corporation he always had plenty of money in the bank and had no debts.
[35] The witness gave the following testimony:
[36] "The Court: May I ask a further question, — there were no minutes kept of the corporation meetings or anything? A. There were no other stockholders but Mrs. A. K. Mills and A. K. Mills, Junior, and whatever Mr. Mills did was perfectly agreeable with them. They didn't keep up with their corporation minutes.
[37] "The Court: During the time you worked there they held no formal meetings of the Board of Directors or stockholders? A. No.
[38] "The Court: They didn't have an annual election of officers or anything of that sort? A. No, not that I know of. *Page 141 
[39] "The Court: Did he sign as president of the corporation? A. Yes.
[40] "The Court: Was there deposits made in the name of the corporation or to his personal account? A. In the name of the corporation.
[41] "The Court: And these checks here that have been testified to were signed by him as president of the corporation? A. Yes, sir."
[42] It is admitted that Hattie Sinclair is the duly acting and authorized administratrix of the estate of A. K. Mills, deceased. It is admitted that D. R. Blanford is funeral director of the Webb City Undertaking Company; that he took charge of said company the first of June, 1947. Blanford, who was president of the company, testified that he secured the controlling interest in the corporation from a man by the name of Norris, who, at the time, was with Leagin, in the operation of the business. He testified that, from March 14th to May 24th, when he purchased the business, Mr. Leagin was president and Mrs. Leagin was a stockholder and that he didn't know any of the other stockholders.
[43] Mr. Mark M. Malone testified, in behalf of plaintiff, that he was employed to make an audit of the Webb City Undertaking Company at the close of the year, June 30, 1947, and that that audit showed that on the 3d of September, 1946, a disbursement was made of $250; September 28th, of $500; February 25, 1947, $300; March 1, 1947, $300; March 10, 1947, $500; that all of these disbursements were made to A. K. Mills, as dividends. He testified that the audit showed the capital stock of the company to be $20,000; total assets, at the time, $13,533.20; that the records showed no part of the disbursements paid to other stockholders and that there were no minutes of stockholders or director's meetings.
[44] He gave this testimony:
[45] "Q. Yes that is the corporation's books, — how much of that is depletion and depreciation? A. $18,000 is depreciation.
[46] "Q. And each year the corporation takes off certain depletion and depreciation doesn't it? A. It must.
[47] "Q. The government requires them to do that? A. That is right. * * *
[48] "Q. That didn't mean they didn't have assets there of $20,000 did it? A. It means that for tax purposes of the state, you pay on assets less depreciation, — you arrive at the taxable value."
[49] Under points and authorities, plaintiff's assignment I is, "Upon dividends being paid when the net assets of the corporation are less than its stated capital, the corporation may hold the directors severally or jointly liable, not in excess of the amount of the dividend."
[50] To sustain this proposition of law plaintiff cites Sections 4997.43, and 4997.44, R.S. Mo. 1939, Mo.R.S.A. Our examination of the first section shows that the law has been amended, Laws of Mo. 1945, Sec. 43, page 701. Paragraph a of Section 43 reads as follows: "No dividend shall be declared or paid at a time when the net assets of the corporation are less than its stated capital or when the payment thereof would reduce the net assets of the corporation below its stated capital."
[51] Section 44, Laws of Mo. 1943, page 436, cited by plaintiff, states the law thus: "The directors of a corporation who shall knowingly declare and pay any dividend except as permitted by and in accordance with the provisions of Section 43 * * * of this Act, * * * shall be jointly and severably liable for all the debts of the corporation then existing, and for all that shall be thereafter contracted as long as they shall respectively continue in office: Provided, that the amount for which they shall be liable shall not exceed the amount of such dividend".
[52] With this statement of law, we agree. But we do not agree with plaintiff that the facts in this case sustain his contention that dividends sued for in his petition were declared and paid out when the net assets of the corporation were less than the stated capital.
[53] We find the facts in this case to be that, at the time the dividends sued for in the *Page 142 
petition were paid to A. K. Mills, out of the assets of the corporation, the evidence clearly shows that the value of the assets of the corporation were far in excess of $20,000 and that there was sufficient surplus to take care of such dividends. There is no dispute in this case that the corporation was not indebted to anyone at the time the alleged dividends were paid. There is no denial of the testimony of defendant that there was sufficient surplus money in the treasury to pay such dividends. The facts fully justify the trial court in finding that the other stockholders had knowledge of and consented to the payment of the dividends. The testimony shows that, at the time of the sale of the assets of this corporation and the transfer of all the stock to Leigon, to-wit; March 13, 1947, they were worth $50,000. The testimony also shows that an audit was taken at that time and the assets were sufficient to justify the purchaser in carrying out this deal.
[54] It is true that the sale of the stock of a corporation is not conclusive evidence of the value of the assets of the corporation because the good will of the corporation is often considered as of great value. But, in this case, we believe that the trial court was justified in finding that the assets of the corporation were much greater than $20,000.
[55] Plaintiff cites Hodde v. Nobbe, 204 Mo. App. 109,221 S.W. 130. This was an action by a receiver of a corporation against the directors to recover dividends alleged to have been paid out of the capital stock and not out of surplus. The court held, in this opinion, that it was clear that the dividends were paid, not out of surplus, but out of the capital of the corporation and that the effect was to impair the capital stock of the company and divert from its assets funds that should have gone to the payment of its creditors. Now if the facts in the case at bar had disclosed that A. K. Mills had paid out dividends of the corporation when there was no surplus and had diverted the money from the corporation's assets which should have gone to pay creditors plaintiff's contention would be clearly right. We fully agree with the law laid down in this case but we find that the facts do not justify its application.
[56] In Caldwell v. Eubanks, et al., 326 Mo. 185, 30 S.W.2d 976, 72 A.L.R. 621, cited by plaintiff, we find no law in conflict with what we have herein said. In this case the stockholders of a corporation brought an action against the directors for losses sustained by negligence in mismanagement of corporate business. The case was decided on the pleadings, holding that the action must be brought in the name of the corporation unless the petition stated facts showing that they had exhausted all remedies within the corporation or unless the petition showed facts that would make their efforts to obtain relief through the corporation futile. This case, in no way, changes our opinion that the trial court was justified in finding for the defendant.
[57] Plaintiff's point II states, "The selling of the stockholders shares, at a later date, for more than the stated capital, is not indicative of a surplus at the time the disbursements were made."
[58] Plaintiff cites Coleman v. Booth et al., 268 Mo. 64, 186 S.W. 1021. This was an action brought by a trustee in bankruptcy against the executrix of a deceased director of a corporation for representing $125,000 good will of a corporation as assets of the corporation. The court held that the action of the board of directors in attempting to increase capital stock by adding to the corporate assets the good will of the corporation was void. The court, in this case, holds that the directors have no authority to declare a dividend when the capital stock had been impaired and there are no assets or surplus out of which the dividend can be paid. We agree with this law but we hold that the facts in the case at bar show that there was a sufficient surplus over and above the capital stock out of which the dividends could be paid and, therefore, this case is no authority under the case at bar.
[59] Under point III, plaintiff says, "Dividends must be declared by the Board of Directors and their action must be recorded in the corporation's minutes; and it *Page 143 
is improper for one of the directors to make withdrawals and term them dividends."
[60] To support this contention, plaintiff cites Fair Mercantile Co. v. Union-May-Stern Co., Mo.Sup., 221 S.W.2d 751. This was an action by Fair Mercantile Company, a corporation, against Union-May-Stern Company, a corporation, for breach of contract, wrongful conversion of personalty, and malicious advertising that defendant had acquired plaintiff's assets. The trial court enforced a compromise in this case made by the vice-president and the contention was that the vice-president or president was without authority to compromise the case. Judge Clark, speaking for the court, 221 S.W.2d on page 753 of the opinion, states that the authorities cited hold, "* * * that the president of a corporation, without any special authority from the board of directors, may perform for the corporation all acts of an ordinary nature which, by usage or necessity are incident to his office; that the authority of directors to bind the corporation belongs to them collectively, not individually, and their actions are to be shown by the minutes of the corporation; however, where the president or other officer of a corporation acts as its agent and is by it so recognized and treated, or held out to the world, his acts within the scope of authority given to him are binding on the corporation; but that such agency cannot be established by proof of acts, declarations and conduct of the alleged agent, unless the same are known to the principal, or are so often repeated that knowledge on the part of the principal is implied."
[61] This case, as well as the one at bar, alleges that plaintiff is a family corporation. All the stock was owned by the president, his wife and three sons and one of the sons had dominated and directed all the business activities of the corporation. The facts in this case show that the manager contracted to sell the entire stock of merchandise, that he operated the business alone, employed attorneys to bring suit, etc., and the court, from these facts, stated the law to be, "(7) From the admitted facts recited above, Phillip Paull acted as the general manager and agent of the plaintiff corporation throughout its existence, with apparent authority to transact all of its business and without objection from any officer, director or stockholder of the corporation. Under the cases cited by appellant, the acts of Phillip Paull were of such nature and duration as to imply knowledge and acquiescence on the part of the officers and directors and to clothe him with general authority to transact the business of the corporation."
[62] We hold in the case at bar that for more than twenty years A. K. Mills, president of the Webb City Undertaking Company, operated said business solely with the full approval and acquiescence of his wife and son, the other stockholders and directors; that whenever there was a surplus he declared and paid dividends and that his acts were binding upon the corporation. The acts were of such a nature and duration as to imply knowledge and acquiescence on the part of the officers and directors and to clothe him with authority to declare such dividends.
[63] We have examined the other authorities and we find nothing contrary to this finding.
[64] Plaintiff's contention, under assignments IV and V, states propositions of law which are true wherever facts justify such findings but the authorities he cites, in no way, conflict with our holding here. Of course, if a director or directors of a corporation undertake to profit at the expense of a corporation while dealing with its property, either directly or indirectly, they are held as trustees as to such profit for the benefit of the corporation. This is true because of the fiduciary relationship that they bear to the corporation.
[65] Likewise, it is the law that where dividends have been improperly declared they can be recovered in an action brought by the corporation. These holdings are in no way adverse to our findings in the case at bar.
[66] We hold that the trial court was justified in finding that the dividends paid *Page 144 
out by A. K. Mills, as alleged in plaintiff's petition, were paid out by the implied authority from the directors and stockholders of the corporation and were not only his acts but were the acts of all of the directors of the corporation and that the corporation was bound.
[67] Judgment affirmed.
[68] VANDEVENTER, P. J., and BLAIR, J., concur.