**QUINCY SOYBEAN COMPANY, INC., Plaintiff/Appellant,**

v.

**Birney LOWE, Assessor for the County of Audrain, Missouri, State Tax Commission of Missouri, Defendants/Respondents.**

No. 55744.

Missouri Court of Appeals, Eastern District, Northern Division.

June 30, 1989.

John B. Morthland, Hannibal, for plaintiff/appellant.

Thomas I. Osborne, Audrain County Pros. Atty., Mexico, for defendants/respondents.

GRIMM, Judge.

In this tax assessment case, plaintiff, Quincy Soybean Company, Inc., appeals the 1985 assessed valuation of two of its properties. It contends that the State Tax Commission's order is "unsupported by competent and substantial evidence upon the record, is arbitrary, capricious or unreasonable, and involves an abuse of discretion." Finding to the contrary, we affirm.

Company owns two grain storage facilities in Audrain County, Missouri. On the Laddonia facility, the county assessor placed a "true value in money" valuation of $571,400, and an assessed value of $182,094.

On the Martinsburg facility, the assessor established a "true value in money" valuation of $225,400, and an assessed value of $72,128. At the State Tax Commission hearing, the assessor reduced the Martinsburg values to $199,577 and $63,865 respectively.

The assessor's office primarily relied on the "replacement cost less depreciation" approach in establishing these values. That method was used, according to the deputy assessor, Michael Gary, because the office "didn't have adequate information to use the income approach and there was definitely a shortage of good, verifiable sales to use" a comparable sales approach.

Before the commission, Gary testified that he had approximately 24 years' appraisal experience. This included two and one-half years as an appraiser in the St. Charles County assessor's office and two years in the Audrain County assessor's office.

Company's witness, Tom Hegadorn, testified that he "appraised [the properties] strictly on the basis of market value current conditions." He created a grading point system for grain elevators. This system placed 60% emphasis on economic considerations and 40% on handling factors. The economic considerations included product availability, market access, competition, and inventory turnover. Handling factors included capability to receive grain, and retrieve it from storage, and the amount of labor needed considering the equipment at the facility. Using this method, he placed the fair market value of the Laddonia facility at $188,527 and the Martinsburg facility at $43,364.

Although company's brief contains three points relied on, the first two are embodied in the third point. That point alleges the commission's order is "unsupported by competent and substantial evidence upon the record, is arbitrary, capricious or unreasonable, and involves an abuse of discretion." Company contends that commission arbitrarily ignored the means of evaluating the facilities presented by its witness.

"On review of an administrative decision, [an appellate] court is limited to a determination of whether the decision was supported by competent and substantial evidence upon the whole record, whether it was arbitrary, capricious or unreasonable, or whether the commission abused its discretion." *Hermel, Inc. v. State Tax Comm'n*, 564 S.W.2d 888, 894 (Mo.banc 1978). "The evidence must be considered in a light most favorable to the administrative body, together with all reasonable inferences which support it." *Id.*

■ Section 137.115, RSMo 1986 requires property to be assessed at a percentage of its "true value in money." "True value in money" is the equivalent of "fair market value." *O'Flaherty v. State Tax Comm'n*, 698 S.W.2d 2, 3 (Mo.banc 1985). Our courts have approved the "comparable sales," "cost of replacement," and "capitalization of income" methods of arriving at fair market value. *Del–Mar Redevelopment Corp. v. Associated Garages, Inc.*, 726 S.W.2d 866, 869 (Mo.App.E.D.1987); *State ex rel. State Highway Comm'n v. Southern Dev. Co.*, 509 S.W.2d 18, 27 (Mo. Div. 2 1974). The assessor used one of these approved methods—replacement cost less depreciation—in determining true value in money.

On the other hand, company's witness did not use one of the three methods. Instead, his method was one devised by him. He characterized his method as founded on "comparable sales," using his grade point system to "bring them more in line as comparable." He used five pieces of property as "comparable sales." Of the five, however, only three involved actual sales. Of those three, he acknowledged that only one was a "[b]ona fide sale right in the area" which "provided a good, strong, understandable comparable."

■ A presumption exists that the assessed value fixed by the assessor, Board of Equalization, or commission is correct. *Cupples Hesse Corp. v. State Tax Comm'n* 329 S.W.2d 696, 700 (Mo.Div. 2 1959). Substantial controverting evidence is required to rebut the presumption, with the burden of proof resting on the taxpayer. *Id.* at 702.

Here, in its order, the commission said that company's "nontraditional method of appraising" did not rebut the presumption in favor of the validity of the assessor's assessment. It noted that the market comparison, cost less depreciation, and income capitalization methods "have found general judicial and professional acceptance for use in property appraisal and assessment." The commission is "naturally skeptical of a different method utilized to determine property value."

 Methods of valuation and assessment of property are matters delegated to the expertise of the administrative agency by the legislature. *C & D Inv. Co. v. Bestor*, 624 S.W.2d 835, 838 (Mo.banc 1981). Here, the method used by the assessor, replacement cost less depreciation, is widely accepted. That method, and the valuation based thereon, constitutes substantial evidence to support the commission's findings. *City of St. Louis v. State Tax Comm'n*, 505 S.W.2d 75, 81 (Mo.Div. 1 1974).

The commission's order, supported by competent and substantial evidence, is not arbitrary, capricious, or unreasonable. *See State ex rel. Swofford v. Randall*, 236 S.W.2d 354, 356–57 (Mo.App.W.D.1950). Under such circumstances, the commission did not abuse its discretion in entering its order. *Hammack v. Missouri Clean Water Comm'n*, 659 S.W.2d 595, 600 (Mo.App. S.D.1983).

The commission's order is clear that the "assessed valuation method of the subject property as determined by [the assessor], and confirmed by the County Board of Equalization" was affirmed. In its findings, however, the commission determined that the true value in money of the Laddonia property was $569,044, and the Martinsburg property was $225,400. These amounts did not reflect the adjustments made by the assessor, as indicated in the record.

The circuit court in its order, affirmed the commission's decision "affirming the assessed valuation ... as determined by the Assessor." The court's order did not set forth any specific value for the two properties.

The judgment of the trial court affirming the order of the commission is affirmed. This affirmance includes the determination that the true value of the Laddonia property is $571,400, and it has an assessed value of $182,094. Also, the true value of the Martinsburg property is $199,577, and it has an assessed value of $63,865.

PUDLOWSKI, C.J., and DOWD, J., concur.