AHRENS, P.J., and CRIST, J., concur.

**ST. JOE MINERALS CORPORATION, a New York Corporation, and Pea Ridge Iron Ore Company, Inc., a Missouri Corporation, Plaintiffs–Appellants,**

v.

**STATE TAX COMMISSION OF MISSOURI, William R. Brenner, Chairman, Van E. Donley, Commissioner, and Bruce E. David, Commissioner, and Virginia Pashia, Assessor for the County of Washington, Missouri, Defendants–Respondents.**

No. 62330.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 13, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 25, 1993.

Application to Transfer Denied
June 29, 1993.

Jerome M. Rubenstein, St. Louis, for plaintiffs-appellants.

Rhonda A. O'Brien and Margaret M. Mooney, Lashly & Baer, St. Louis, for defendants-respondents.

CRANDALL, Presiding Judge.

Plaintiffs, St. Joe Minerals Corporation (St. Joe) and Pea Ridge Iron Ore Company, Inc. (Pea Ridge), appeal from the judgment of the circuit court which affirmed the Decision and Order of the State Tax Commission of Missouri (Commission). We reverse and remand.

Pea Ridge Iron Ore Mine (Mine), subject to real estate taxation for the years 1988, 1989, and 1990, was owned by Pea Ridge, a

wholly owned subsidiary of St. Joe. Fluor Corporation acquired St. Joe in 1981. In 1987, Fluor retained the services of Shearson Lehman Brothers, Inc. to sell Pea Ridge.

The effort to sell Pea Ridge spanned a three year period and involved contacting more than seventy companies throughout the world. Fluor was under no compulsion at the time to divest itself of Pea Ridge, but simply had decided to get out of the iron ore mining business. Ultimately a sale of all the stock of Pea Ridge was consummated in June, 1990, between Big River Minerals Corporation and Fluor Corporation, for a total of $13,364,899.00.

The Mine includes the only operating underground iron ore mine in the United States. It is a single use real estate property located primarily in Washington County. The Mine is comprised of a deep shaft iron ore mine, a pelletizing plant, and other related improvements.

Plaintiffs sought to establish the true value of the Mine by reference to the sale price of Pea Ridge, allocating that amount between the taxable real property and other assets. This allocation includes the following: personal property with an assessed value of $1,372,591.00; net working capital verified at a value of $7,253,446.00; and an appraised value of $791,938.00 for non-mine realty. Based upon this distribution, plaintiffs contended that the remainder of the $13,364,899.00 purchase price, attributable to the subject property and rounded to $3,950,000.00, represented the property's true value.

After considering evidence of the sale price and plaintiffs' allocation among the assets, the Commission adopted the income capitalization method for valuing the real estate. The net income produced by the Mine was approximately 2 to 2.5 million dollars yearly. Based upon that evidence, the Commission concluded that the allocated sale price failed to adequately represent the true value of the taxable property.

The true value and assessment, as of January 1 for each of the years at issue, as projected by the parties as well as various administrative evaluations, is as follows:

| True Value of Real Property | | |
|---|---|---|
| 1988 | 1989 | 1990 |
| Plaintiffs $3,950,000.00 | (same) | (same) |
| Assessor and Board of Equalization $34,884,609.00 | (same) | (same) |
| Hearing Officer $17,703,500.00 | $14,603,500.00 | $19,503,500.00 |
| Commission $17,303,500.00 | $14,603,500.00 | $19,503,500.00 |

| Property Tax Assessment | | |
|---|---|---|
| 1988 | 1989 | 1990 |
| Plaintiffs $1,264,000.00 | (same) | (same) |
| Assessor and Board of Equalization $11,162,375.00 | (same) | (same) |
| Hearing Officer $5,664,420.00 | $4,672,420.00 | $6,240,420.00 |
| Commission $5,536,420.00 | $4,672,420.00 | $6,240,420.00 |

Plaintiffs appeal from the judgment of the circuit court which affirmed the Commission's decision.[1]

1. Jurisdiction is properly vested in this court, as this appeal involves a determination of the validity of the valuation of property for tax purposes, and does not require the construction of the state's revenue laws. *See Hermel, Inc. v. State Tax Commission of Missouri,* 564 S.W.2d 888, 897 (Mo. banc 1978).

■ We review the administrative agency's decision for a determination whether it is supported by substantial and competent evidence upon the whole record, *Hermel,* 564 S.W.2d at 894, or constitutes an abuse of discretion, is unauthorized by law, or is arbitrary, capricious or unreasonable. *State ex rel. Kahler v. State Tax Commission of Missouri,* 393 S.W.2d 460, 464 (Mo. 1965). *See* § 536.140.2 RSMo (1986).[2]

Section 137.115.1(1) grants the statutory authority for tax assessment of, *inter alia,* real property, providing in pertinent part:

... the assessor or his deputies in all counties of this state ... *shall ... assess ... possessory interests in real property at the percent of its true value in money* set in subsection 5 of this section....

(emphasis added).[3]

■ "True value" is never an absolute figure, *Cupples Hesse Corp. v. State Tax Commission of Missouri,* 329 S.W.2d 696, 700 (Mo.1959), but is merely an estimate of the fair market value on the valuation date. *O'Flaherty v. State Tax Commission,* 698 S.W.2d 2, 3 (Mo. banc 1985); *Hermel, Inc.,* 564 S.W.2d at 897. Fair market value typically is defined as the price which the property would bring when offered for sale by a willing seller who is not obligated to sell, and purchased by a willing buyer who is not compelled to buy. *See State ex rel. State Highway Commission of Missouri v. Pfizer, Inc.,* 659 S.W.2d 537, 540 (Mo.App. 1983). *See also,* M.A.I. 16.02.

■ There are various methods that may properly be considered for estimating true value, including actual sale price, comparable sales, replacement cost, and income capitalization. The Commission is not required to adopt any particular valuation technique. *See Quincy Soybean Co., Inc. v. Lowe,* 773 S.W.2d 503, 505 (Mo.App. 1989).

Plaintiffs contend on appeal that the Commission erroneously rejected the sale price of Pea Ridge as conclusive proof of the value of the assets of the corporation. They, in effect, argue that the sale price was binding on the Commission and therefore the true value of the Mine is calculated by deducting the value of the other assets of the corporation from the sale price.

■ The actual purchase price is not conclusive for tax purposes. *See, e.g., State ex rel. Kahler,* 393 S.W.2d at 465; *Stein v. State Tax Commission of Missouri,* 379 S.W.2d 495, 498 (Mo.1964).[4] Rather, evidence of the consideration paid may be *admissible* to establish value at the time of an assessment, provided that such evidence is competent—i.e., a voluntary purchase not too remote in time. *See State ex rel. State Highway Commission of Missouri v. Rauscher Chevrolet Co.,* 291 S.W.2d 89, 92 (Mo.1956) (relating to a condemnation action); *State ex rel. State Highway Commission of Missouri v. Crain,* 496 S.W.2d 867, 869 (Mo.App.1973) (same).

■ The Commission, after considering plaintiffs' evidence of the sale price of Pea Ridge, adopted the income capitalization method employed by the Hearing Officer. Capitalization of income has previously

**2.** All further statutory references are to RSMo (1986) unless otherwise indicated.

**3.** Subsection 5(3) of § 137.115 provides that commercial property, such as that used for mining, shall be taxed at thirty-two percent. *See also,* § 137.016.1(3). The rate of taxation is not disputed by the parties.

**4.** Plaintiffs rely upon a series of cases decided by a foreign tribunal for the proposition that sale price from a recent, arms-length transaction is the "best evidence of true value." *See Consolidated Aluminum Corp. v. Monroe County Bd. of Revision,* 66 Ohio St.2d 410, 423 N.E.2d 75 (Ohio 1981); *Conalco, Inc. v. Monroe County Bd. of Revision,* 54 Ohio St.2d 330, 376 N.E.2d 959 (Ohio 1978); *Conalco, Inc. v. Monroe County Bd. of Revision,* 50 Ohio St.2d 129, 363 N.E.2d 722 (Ohio 1977). The factual background upon which this series of cases was decided is distinguishable in that the lump sum purchase price was for all assets of one of the corporation's divisions, rather than a stock purchase as herein presented. In addition, the decisions cited are not binding on this court.

been utilized to estimate true value for taxation purposes, *see, e.g., St. Louis County v. Security Bonhomme, Inc.,* 558 S.W.2d 655 (Mo. banc 1977); *Xerox Corp. v. State Tax Commission of Missouri,* 529 S.W.2d 413 (Mo. banc 1975), and under appropriate circumstances more accurately estimates true value of single use realty operated for its ability to produce an income stream. *See City of St. Louis v. Union Quarry & Construction Co.,* 394 S.W.2d 300, 305–306 (Mo.1965) (income capitalization method properly employed to establish true value of mine in condemnation action). *See also,* E. Oberbilling, "Appraisal of Mineral Property," *Encyclopedia of Real Estate Appraising,* (Edith J. Friedman, ed. 1978), at 619 (capitalization method is usually employed in estimating value of mineral property unless comparable sales data is available).

■■■ Plaintiffs challenge the manner by which the Commission calculated the true value for each tax year using the income capitalization method. Specifically, plaintiffs point to the discrepancy between the purchase price of Pea Ridge and the valuation of the Mine—that is, the assessment of the single asset exceeding the amount paid for the corporation. Thus, the salient issue presented by this appeal is whether the income capitalization method of valuation, as a matter of evidence, accurately indicates the true value of the Mine.

As previously discussed, the Commission rejected plaintiffs' valuation of the Mine based upon an allocation of the price for the sale of Pea Ridge. This decision derived from the fact that while Pea Ridge sold for $13,364,899.00, its net income was, on average, 2 to 2.5 million dollars each year. Thus, according to the Commission, an allocation of $3,950,000.00 for the real property, which generated substantially all of Pea Ridge's income, underestimated the true value of that property.

Although we may not substitute our judgment for that of the Commission as to the correct valuation method to adopt, *Her-*

*mel,* 564 S.W.2d at 896, the capitalization of income approach as herein applied is simply not supported by the evidence in the record. The sale of Pea Ridge was an arms-length sale of a business. There is substantial evidence in the record to justify the conclusion that the actual sale price represented the true value of the assets of Pea Ridge. The Commission, using the capitalization method for each tax year, reached a disparate result which valued one of the corporation's assets greater than the total consideration paid for the entire corporation.

While the actual sale price of Pea Ridge does not, as a matter of law, establish the value of the Mine, *see Webb City Undertaking Co. v. Sinclair,* 240 Mo.App. 958, 225 S.W.2d 138, 142 (Mo.App.1949), clearly, as a matter of evidence, it establishes an outer limit on the value of the taxable realty. We do not mean to imply that plaintiffs' proposed allocation of value from that sale price is either correct or incorrect. We simply hold that, based upon the record, the value of the Mine itself is necessarily less than the combined assets of Pea Ridge. Consequently, the Commission's assessments are unreasonable.

The judgment of the circuit court is reversed and the cause is remanded with directions to remand the cause to the Commission for redetermination of the value of the subject property for the taxable years in question consistent with this opinion.

PUDLOWSKI and GRIMM, JJ., concur.