**DRURY CHESTERFIELD, INC., Respondent,**

v.

**Philip MUEHLHEAUSLER, Assessor St. Louis County, Appellant.**

**No. ED 93686.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 16, 2011.

Patricia Redington, County Counselor, Paula J. Lemerman, Associate County Counselor, Clayton, MO, for Appellant.

Thomas L. Caradonna, Derick C. Albers, Lewis, Rice & Fingersh, L.C., St. Louis, MO, for Respondent.

DANIEL G. PELIKAN, Special Judge.

## Introduction

Respondent Drury Chesterfield, Inc. (Drury) challenged the assessment of its real property and improvements in St. Louis County for the 2006 tax year. The State Tax Commission (Commission) issued an order on October 15, 2008, sustaining its hearing officer's decision and affirming the St. Louis County Board of Equalization's decision, finding the appraised valuation for the two parcels of property owned by Drury, as determined by the county assessor for the tax year 2006, was $23,175,400. Drury filed a timely petition for judicial review in the Circuit Court of St. Louis County. The circuit court reversed the Commission's order, finding the Commission's order was unauthorized by law in considering the total development cost in concluding that the cost approach to valuation was the most appropriate appraisal method for valuing the subject property. The circuit court ordered the Commission to set aside the 2006 tax year assessment and find that the true value in money of Drury's real property as of January 1, 2006, is $13,900,000. St. Louis County Assessor, Philip Muehlheausler (Assessor) filed his timely notice of appeal to this Court. We review the decision of the Commission, rather than that of the circuit court, pursuant to Sections 138.432, 138.470, and 536.100 through 536.140, RSMo. Finding that the Commission did not abuse its discretion in sustaining the hearing officer's decision of July 18, 2008, we reverse the trial court's judgment.

## Background

On January 1, 2006, Drury owned two parcels of property located at 333 and 355 Chesterfield Center East in Chesterfield, St. Louis County (the Subject Property). Drury purchased the parcels in May 2004 for $5,106,431. Drury was in the process of constructing and building the Drury Plaza Hotel and its adjacent restaurant as

of January 1, 2006, spending more than $25,000,000 constructing the improvements. The smaller parcel contained 1.05 acres improved with a one-story, 4400–square–foot office building being temporarily utilized as construction offices for the hotel construction project. The larger parcel contained 3.8 acres improved with a ten-story hotel structure containing 164,054 gross square feet, which was approximately 85 percent constructed as of January 1, 2006. Both parties agreed that the highest and best use of the property was the current use, hotel development.

Assessor valued the real property of the Subject Property as of January 1, 2006, at $23,175,400. Drury's appraiser valued the Subject Property at $13,550,000. Drury appealed to the St. Louis County Board of Equalization, which sustained Assessor's value. Drury then appealed to the Missouri State Tax Commission.

A hearing was conducted before a hearing officer of the Commission. Drury presented testimony from Gary P. Andreas (Andreas), a principal of real estate appraisal firm H & H Financial Group, Inc., which Drury retained to appraise the Subject Property and set forth findings and opinions in an appraisal report. Andreas indicated that the Subject Property's market value as of January 1, 2006, was $13,900,000.[1] He opined that the income capitalization approach to valuation was the best method to use for the Subject Property.[2] Andreas testified that the hotel on the Subject Property was not yet operational on January 1, 2006. He had performed a cost and sales comparison approach, as well as an income approach to value the Subject Property, but relied on the income approach.

Andreas testified that the income approach was "completely hypothetical" because the Subject Property was not producing income as of January 1, 2006. Andreas said that the developer provided costs for construction, which did not include the cost of land acquisition, and also provided separately the costs for land acquisition. He reviewed comparable land sales that were west of the Subject Property within a couple of miles and located in the Chesterfield Valley flood plain. Andreas chose to use reproduction costs rather than replacement costs because the Subject Property was newly constructed. He did not consider the actual cost of the land because the land had been acquired in 2001, and he said several market forces came into place prior to the date of assessment. Drury's appraisal report stated that the income capitalization approach analyzes the property's capacity to generate income and converts this capacity into an indication of market value. Andreas noted that the income approach is suitable for properties that have "obvious earning power and investment appeal" but is inappropriate for properties that have "no readily discernible income potential." Drury's appraisal report stated that the income approach is "generally the preferred technique for ap-

---

1. Drury's appraiser combined the two separate real estate parcels and provided only one value.

2. The income capitalization approach evaluates what a willing buyer would pay to realize the income stream that could be obtained from the property when devoted to its highest and best use. "Under this method, the Commission must project the net income stream that could reasonably be anticipated by an investor/purchaser, discounting future dollars to present levels in order to compensate for risk and the elapsed time required to recapture the initial investment." *Nance v. State Tax Comm'n of Mo.*, 18 S.W.3d 611, 616 n. 4 (Mo.App. W.D.2000), *quoting Equitable Life Assurance Soc'y of U.S./Marriott Hotels, Inc. v. State Tax Comm'n of Mo.*, 852 S.W.2d 376, 380 (Mo.App. E.D.1993).

praising income-producing properties because it most closely reflects the investment rationale and strategies of typical buyers."

Referring to the cost approach, Andreas stated that the "concluded hypothetical value via the Cost Approach was $32 million; however this value represents the hypothetical value of the subject property as of the date of the completion prior to the adjustment for the impact of non-real estate components." In his appraisal report, Andreas explained that the cost approach estimated the cost to replace the improvements, and deducted any depreciation to combine that result with the estimated value of the underlying land. "The [cost] approach is applicable when each component is independently measurable and when the sum of all components is believed to reflect market value. The approach is not applicable to unimproved land or obsolete improvements," the report states. Andreas did not mention any errors in the County's description of the Subject Property.

Andreas summarized his written appraisal as follows:

> The appraisal process includes the estimation of the hypothetical market value of the subject as of the date of appraisal then adjusting the market value to reflect the exclusion of the contribution to value of non-real estate components such as the value of the franchise, the value of the assembled labor force, the value of any related reservation system and the costs to be incurred to complete the construction of the physical components of the hotel.

The Assessor presented testimony from one of his employees, Boris Frumson (Frumson), who testified that the County utilized a computer generated cost approach methodology to support Assessor's valuation of $23,175,400.[3] Frumson said that the Marshall Valuation Service was the source of the market data that the Integrated Assessment System used to calculate a cost approach. The appraisal considered the base replacement cost, and then a "modifier" of a higher grade hotel of "B," giving the Subject Property a replacement cost new of $108.70 per square foot. Frumson explained that the total replacement cost new, less depreciation was $18,308,670. The County's income approach to value concluded $10,223,700, which was not based on an operating hotel and was for a partial year. Frumson's opinion was that the true value in money for the Subject Property as of January 1, 2006, was $22,400,400 and $775,000 for the two parcels separately, for a total of $23,175,400. Frumson testified that he agreed that the income approach to valuation relates to most hotel and motel properties that involve relatively high risk and are bought for investment purposes only, but that is why the County uses a 70 percent adjustment ratio in its approach. Frumson explained in his written testimony that the income approach to valuation was not used by the County because the income model in the Integrated Assessment System and the income and expense data provided by the taxpayer were inconclusive because the hotel was not in operation as of January 1, 2006. He added that some of the Subject Property's amenities were not completed as of that date. On the other hand, the Integrated Assessment System relied on the cost approach conclusion because it was a "highly reliable indicator of value" for a newly constructed property.

---

3. The cost approach evaluates the value of the land, adds the value of replacement costs of improvements, and subtracts from that sum the value of depreciation of the improvements. *Nance*, 18 S.W.3d at 616 n. 5.

The hearing officer issued a decision and order on July 18, 2008, affirming Assessor's valuation of the Subject Property. Concluding that Drury failed to meet its burden of proof, and that the cost approach, rather than the income approach, was most appropriate for valuing the Subject Property, the hearing officer found that Assessor calculated the market value of the 1.05–acre parcel with a 4400–square–foot building on January 1, 2006, at $775,000. Assessor calculated a land value for the second parcel of $1,688,400 and improvements of $20,712,000. The land value was calculated using market data and improvements were valued using the Marshall Valuation Service, an accepted valuation method. The hearing officer found the total value of the Subject Property using the cost approach was $23,175,000.

Drury appealed the hearing officer's decision and order to the full Commission, which sustained the hearing officer's decision and order. The Commission found that the hearing officer correctly concluded that the cost approach was the appropriate method of valuation. The Commission further found that the hearing officer correctly concluded that Drury's appraisal did not rise to the level of substantial and persuasive evidence.

Drury then appealed to the Circuit Court of St. Louis County. The circuit court's judgment found that the Commission's hearing officer applied an improper valuation standard to the Subject Property under Missouri law. The circuit court found that the cost approach in valuing the Subject Property was improper as a matter of law because it inappropriately considered Drury's total costs to develop the Subject Property (including non-real estate components), which were irrelevant in determining the property's fair market value in exchange. Reversing the Com-

mission's decision, the circuit court ordered the Commission to set aside Assessor's 2006 tax year assessment of the Subject Property and find that the true value of the real property, as of January 1, 2006, was $13,900,000.

Assessor timely filed a notice of appeal with this Court. This appeal follows, reviewing the decision of the Commission.

*Point on Appeal*

On appeal to this Court, which reviews an administrative agency's decision that was reversed by the circuit court, Assessor asserts that the decision of the State Tax Commission should be affirmed because Drury failed to present substantial and persuasive evidence sufficient to rebut the presumption of validity and correctness of the valuation assigned to the Subject Property by the Assessor and the St. Louis County Board of Equalization, and further that the cost approach to value was the most appropriate methodology to arrive at the fair market value of the Subject Property as of January 1, 2006.

*Standard of Review*

On appeal, this Court reviews *de novo* whether the Commission's decision constituted an abuse of discretion, whether it was supported by competent and substantial evidence on the record as a whole, or whether it was arbitrary, capricious, or unreasonable. *Algonquin Golf Club, et al. v. State Tax Comm'n of Mo. & Muehleheausler*, 220 S.W.3d 415, 418 (Mo.App. E.D.2007). In matters of property tax assessment, this Court has acknowledged "the wisdom of the General Assembly in providing an administrative agency to deal with this specialized field." *Savage v. State Tax Comm'n of Mo.*, 722 S.W.2d 72, 74 (Mo. banc 1986), *quoting State ex rel. Cassilly v. Riney*, 576 S.W.2d 325, 328 (Mo. banc 1979). It is presumed that As-

sessor's valuation is correct unless shown in some respect to be incorrect. *Xerox Corp. et al. v. State Tax Comm'n of Mo. et al.*, 529 S.W.2d 413, 414 (Mo. banc 1975). The burden of overcoming this presumption lies with the party challenging the tax assessment. *Id.* The appellate court considers the evidence in the light most favorable to the Commission, together with all reasonable inferences that support it. *Savage*, 722 S.W.2d at 74. If the evidence would support either of two opposed findings, the reviewing court is bound by the Commission's administrative determination. *Id.* Proper methods of valuation and assessment of property are delegated to the Commission. *Id.* Credibility of witnesses is for the administrative body to determine and we, as a reviewing court, must give deference to the findings of the Commission on the credibility of witnesses appearing before the administrative body. *Friedman v. Miller, et al.*, 525 S.W.2d 770, 772(Mo.App.1975).[4]

*Discussion*

■ Section 137.115.1 requires the county assessor to "annually assess all real property, including any new construction and improvements to real property, and possessory interests in real property at the percent of its true value in money," set forth in a subsection of the same statute. "True value" is never an absolute figure, but is merely an estimate of the fair market value on the valuation date. *St. Joe Minerals Corp. v. State Tax Comm'n of Mo.*, 854 S.W.2d 526, 529 (Mo.App. E.D. 1993). "Fair market value typically is de-

fined as the price which the property would bring when offered for sale by a willing seller who is not obligated to sell, and purchased by a willing buyer who is not compelled to buy." *Id.*

■ Missouri courts have approved the comparable sales or market approach, the cost approach (replacement or construction) and the income approach as recognized methods of arriving at fair market value. *St. Joe Minerals Corp.*, 854 S.W.2d at 529; *Aspenhof Corp. v. State Tax Comm'n*, 789 S.W.2d 867, 869 (Mo.App. E.D.1990); *Quincy Soybean Co., Inc. v. Lowe*, 773 S.W.2d 503, 504 (Mo.App. E.D. 1989). It is within the purview of the hearing officer to determine the method of valuation to be adopted in a given case. *Nance v. State Tax Comm'n of Mo.*, 18 S.W.3d 611, 615 (Mo.App. W.D.2000); *Xerox Corp.*, 529 S.W.2d at 414.

■ The cost approach to valuation is the most appropriate method when the property being valued has been recently improved with structures that conform to the highest and best use of the property or when the property has unique or specialized improvements for which there are no comparables in the market. *Snider v. Casino Aztar/Aztar Mo. Gaming Corp.*, 156 S.W.3d 341, 347 (Mo. banc 2005). The income approach determines value by estimating the present worth of what an owner will likely receive in the future as income from the property and is "based on an evaluation of what a willing buyer would pay to realize the income stream that could be obtained from the property

**4.** A review of the Legal File and the evidence before the State Tax Commission indicate that Drury's evidence consisted of its appraisal and testimony of its Appraiser. Assessor's evidence included the testimony of its appraiser and 16 exhibits, including the Drury Job Cost Report, pages from the Dairy website, hotel building plans, hotel room count, site plan, a letter from Murphy Property Tax Consulting, Purchaser's statement for Land 2001, Exchange and Sale Agreement, December 2006 Statement of Operations, Management and Marketing Agreement, Lease, Application for Demolition, Industrial Review Document, Property Record Card and Deed record.

when devoted to its highest and best use...." *Equitable Life Assurance Soc'y of U.S./Marriott Hotels, Inc. v. State Tax Comm'n of Mo.*, 852 S.W.2d 376, 380 (Mo. App. E.D.1993). The income capitalization method of valuation is derived from the market, which reduces the need for unsubstantiated, subjective judgments. Stephen Rushmore & Erich Baum, *Hotels & Motels: Valuations and Market Studies* 319 (Appraisal Institute 2001). The income capitalization approach is applied in three steps: (1) net income is forecasted for a specified number of years; (2) an appropriate discount factor or capitalization rate is selected; and (3) the proper discounting and/or capitalization procedure is applied. *Id.*

The method used by the Assessor in this case was the widely accepted replacement cost less depreciation method. *Aspenhof Corp.*, 789 S.W.2d at 869. This method consists of three factors: (1) the value of the land if it were vacant, added to (2) the value of replacement costs of improvements, and subtract from that sum (3) the value of depreciation of the improvements. *Id.*

 Drury argues that Assessor incorrectly valued the Subject Property by its "value in use," or value to its owner, rather than its "true value in money," or its value in exchange, citing to *Equitable Life Assurance*, 852 S.W.2d at 380–81. Drury also argues that the Commission misapplied the law by approving the cost approach method of valuation, in which the hearing officer considered Drury's total costs to develop the Subject Property and Assessor's use of intangible costs. Furthermore, Drury argues that the cost approach method of valuation "is not properly applied to the appraisal of hotels," citing Rushmore & Baum's *Hotels & Motels: Valuations and Market Studies*, because "its underlying assumptions do not reflect

the investment rationale of typical hostelry buyers." Stephen Ruslimore & Erich Baum, *Hotels & Motels: Valuations and Market Studies* 311 (Appraisal Institute 2001). The authors of that source state that lodging facilities are income-producing properties that are purchased to realize future profits, whereas replacement or reproduction cost has little bearing on investment decisions when the buyer is primarily concerned with the potential return on equity. *Id.*

In *Equitable Life Assurance*, valuation of the Marriott hotel was at issue. 852 S.W.2d at 376. The taxpayer's expert valued the real property (land and improvements) using the income capitalization approach by studying average daily rates and occupancy rates of competing hotels in the area rather than the Marriott's own rates, in order to forecast net income for a specified number of years by using market characteristics instead of actual operations of the property. *Id.* at 381. This Court stated that "for real estate assessment purposes, the Commission must value only the real property—i.e., the land and improvements" for a hotel rather than non-real estate components, such as the value of the hotel's franchise, the business acumen of the hotel's operators, or the hotel's personal property. *Id.* Such non-real estate components are "not part of the income stream that could reasonably be anticipated by a willing buyer of the land and improvements only." *Id.* The court explained in *Equitable Life Assurance*,

> For many types of income producing properties, such as apartments or office buildings, this calculation may be relatively straightforward. However, ... a hotel operation is a unique investment entity. Although the income actually being derived from hotel operations may be readily ascertainable, as it was in this case, that income stream is the product

of four different income-generating sources: land, improvements, business and personal property; yet for real estate assessment purposes, the Commission must value only the real property—i.e., the land and improvements. *Id.* at 380–81.

We distinguish *Equitable Life Assurance* here because in that case the parties agreed and stipulated that the Commission properly determined the income capitalization approach best reflected market value in that specific instance. *Id.* at 379. The Court stated that the value of the Marriott hotel was the value of the real property rather than the value of the Marriott franchise and business acumen under the income capitalization method, but did not discuss any other method of valuation. *Id.* at 381. Additionally, the hotel buildings in *Equitable Life Assurance* were constructed in 1972 and 1981, whereas the valuation at issue was well after the completion of the buildings, January 1, 1984. *Id.* In the case at bar, however, the parties have proposed two different approaches to valuation and the valuation at issue was performed while the hotel was under construction. Despite the Court's description of the income approach and its application to the valuation of a hotel's property, *Equitable Life Assurance* does not foreclose the possibility that another method also may be used to value a hotel's real property, especially when the hotel is only partially constructed. Even in arguing that Drury's appraiser, like that in *Equitable Life Assurance,* used data of competing hotels in the vicinity in the same manner that a prudent investor would project income, we find Drury's argument fails because the Subject Property was under construction. Indeed, Drury's appraiser conceded that because the hotel was not yet operational, its market value as a going concern can be at best only hypothetical. Because there was no actual net operating income to discount or capitalize, Drury's hypothetical discounted cash flow analysis result was not supported by its cost approach. The costs of construction are accurate but the income evidence is all but non-existent. *Driftwood Shores, Inc., v. Dep't of Revenue,* 276 Or. 619, 555 P.2d 1251, 1252 (1976).

Assessor cites *Aztar* for the proposition that reproduction cost is the best indicator of value for newer properties where actual costs of construction are available, but replacement cost may be more appropriate for older properties. *Snider,* 156 S.W.3d at 347. At issue in *Aztar* was the appraisal of the real and personal property of a gambling casino, rather than a hotel. *Id.* at 345. However, the appraisal of a special purpose property like a casino in *Aztar,* for which there were no comparables in the market, may be applicable to a unique property such as this case, a hotel in the middle of construction.

Despite Drury's contentions, it has not produced substantial and persuasive evidence that the Commission relied on anything but the true value in money or its value in exchange. Moreover, we find no evidence that Assessor included the value of personal property or value attributable to the ongoing business in its valuation using the cost approach. To the contrary, we agree with Assessor's argument that the cost approach to valuation "inherently omits the value of all Furniture, Fixtures and Equipment ... and Business Enterprise Value." Here, the purchase price of the Subject Property and actual construction costs were known. Drury spent $5,106,431 to acquire the two parcels of land. This, together with the Subject Property's value of replacement costs of improvements and minus the value of depreciation of the improvements, provides for a reliable indicator of value.

Although the hearing officer states that Drury failed to meet its burden of proof because it failed to present an opinion of market value and substantial and persuasive evidence that the value it proposed is indicative of the market value of the Subject Property, we find instead that Drury failed to meet its burden because it failed to overcome the presumption that Assessor's valuation is correct. Drury argues why the income method of valuation is appropriate, but has failed to demonstrate and persuade this Court that Assessor's cost approach is an inappropriate means of valuation. Drury failed to produce "substantial controverting evidence" showing Assessor's assessment was excessive. *See Nance,* 18 S.W.3d at 615.

### Conclusion

The trial court's judgment reversing the decision of the State Tax Commission is reversed.

KURT S. ODENWALD, C.J., and ROBERT G. DOWD, JR., J., Concur.