**ST. LOUIS COUNTY, Missouri,
Plaintiff-Appellant,**

v.

**SECURITY BONHOMME, INC., and
State Tax Commission of Missouri,
Defendants-Respondents.**

**No. 59739.**

Supreme Court of Missouri,
En Banc.

Nov. 14, 1977.

Defendants-Respondents' Motion for
Rehearing Denied Dec. 19, 1977.

George W. Lang, II, Clayton, Mo., for appellant.

Edward P. McSweeney, St. Louis, Mo., for respondent.

HENLEY, Judge.

This is an appeal by St. Louis County (County) from a judgment affirming an order of the State Tax Commission (Commission) fixing the 1975 assessed value of real estate owned by Security Bonhomme, Inc. (Security).

Security owns the Chromalloy Plaza office building and the land on which it is located in Clayton, Missouri. The county assessor determined that on January 1, 1975, the assessment date, the true value in money of this building and land was $7,469,820, and in accordance with § 137.-115, RSMo Supp.1975, assessed it for ad valorem tax purposes at 33⅓% thereof, or $2,489,940. Of these totals $275,760 was the true value in money of the land alone resulting in an assessed value of $91,920, and $7,194,060 was the true value in money of the building resulting in an assessed value of $2,398,020. Security appealed this assessment to the county Board of Equali-zation and, upon affirmance by that Board, appealed to the State Tax Commission, contending before both of these bodies that the assessed valuation was too high.

In December, 1975, the Commission heard evidence as to value from two expert witnesses, one for the County and the other for Security. The opinions of these two experts were poles apart as to the true value in money of the improvements, but there was no dispute whatever as to the value of the land. The Commission's decision was that the value of the land and improvements on January 1, 1975, was $4,031,385, approximately $4,000,000 less than the estimate of the County's witness and approximately $800,000 more than the estimate of Security's witness. Hence, the Commission fixed the total assessed value of land and improvements at $1,343,795, being 33⅓% of $4,031,385.

The Chromalloy Plaza building is new. Its construction began in 1971 and was completed for occupancy in 1973. It, and an attached underground parking facility, were built as an investment solely for rental to commercial tenants. It was partially occupied for the last three months of 1973. All of the building was available for occupancy for the first time in 1974. On January 1, 1975, approximately 60% of the building was occupied and in December, 1975, when the Commission hearing was held, its occupancy had increased to approximately 80%.

Security's witness, a general partner in the firm which owned Security, had 17 years experience in the real estate development and management business. He testified that the 1974 gross income for the building and parking garage was $985,000 and its operating expenses were $528,000, leaving a net income for land and improvements of $457,707; that he agreed with the County's assessment of the land at $275,760 which, capitalized by him at 12%, produced an income of $33,091 on the land alone; that he capitalized the balance of the net income ($457,707 less $33,091) of $424,616 at 14½% (being the 12%, plus 2½% per year as depreciation of the building over a period of

40 years, its economic life, according to the witness) which produced a value of $2,928,-386 for the improvements; that, based on these calculations, it was his opinion the true value in money of this real estate as of January 1, 1975, was $3,204,146, being $275,760 for the land and $2,928,386 for the improvements; that the office building and garage had not reached their income potential on January 1, 1975. He also testified that the cost of construction of the improvements was $6,457,000, but that he had the opinion that the cost of construction method of determining value was not the proper method to employ in this case and, therefore, did not consider it in forming his opinion of value; that of the three methods of valuation of real estate for tax purposes mentioned by him ("Capitalization of Income," "Market Data," and "Cost of Construction"), he believes the capitalization of income method is the most accurate for determining true value in money of an office building such as this. He further testified that he knew of no sales in the market of comparable properties and, therefore, did not consider the market data method in forming his opinion of value.

The County's witness, an employee of the Assessor's office, testified that in determining the true value in money of this real estate as of January 1, 1975, he considered the capitalization of income method and the cost of replacement of improvements method, but that he "relied mainly" upon the first. Using the capitalization of income method, he estimated that the value of the property on assessment date was $8,000,000; using the cost of replacement of improvements method, he estimated a value of $10,-000,000.

In his application of the capitalization of income method, he started with an estimate of $546,394 (before payment of real estate taxes) as the net income from the land and improvements for the year 1975 and capitalized that income at 14% to determine its value as a part of an "income stream" based on an economic life of 50 years. Based on his calculations of the 1975 net income he then proceeded to estimate and project for each of the next 49 years (1)

gross income, (2) losses due to vacancies and credit, (3) expenses before real estate taxes, and (4) net income before taxes. To this net income balance he applied an arbitrary and unexplained numerical factor which, he said, produced the present (January 1, 1975) value of all the net income he expected to be produced during the building's fifty-year economic life. The value of that income, thus produced, was then capitalized at 14% to reach what was said by him to be the value of this "income stream" or the true value in money of the property on January 1, 1975. Near the close of his testimony he said: "This type of report is just a little different than direct capitalization."

In connection with its decision, the Commission made and filed findings of fact and conclusions of law, which, omitting introductory paragraphs, are as follows:

"2. No dispute exists as to the value of the land as of January 1, 1975, being $275,-760.00 actual value, and $91,920.00 assessed value.

"3. The St. Louis County Assessor placed the assessed value of the improvements as of January 1, 1975, at $2,398,-020.00.

"4. There is no dispute that the Assessor places assessed value at one-third true value, so that the Assessor placed the true value of the improvements as of January 1, 1975, at $7,194,060.00.

"5. On appeal, the St. Louis County Board of Equalization affirmed the assessment of the Assessor.

"6. The improvements were conceived, constructed and exist as an income property.

"7. Both parties agree that the 'income' or 'economic' method of appraisal is the most accurate for determining the true value of a property such as taxpayer's.

"8. Taxpayer's witness Loomstein, qualified by 17 years experience in the development, ownership and management of commercial properties, testified that the 'income' or 'economic' appraisal method estimates true value by determining a gross

income figure allowing for vacancy, deducting therefrom expenses except for depreciation and debt service, and deducting an additional amount as a fair return to the value of the land. The resulting figure is net income attributable to the improvements, and true value of the improvements is obtained by capitalizing such figure by a percentage which combines a rate of return of investment with a rate of return on investment, since both return of capital (depreciation) and rate of return to capital are considered by buyers and sellers of income properties.

"9. Gross income for 1974 was $985,707.00, and net income (without deduction for debt service or depreciation) was $457,707.00, expenses being $528,000.00.

"10. Witness Loomstein testified that a fair return to land value would be 12%, or $33,091.00, reducing net income attributable to improvements to $424,616.00.

"11. Witness Loomstein testified that a fair capitalization rate to determine true value of improvements would be 14½%, 12% return plus 2½% depreciation, and this when applied to net income of $424,616.00, results in a true value of improvements of $2,928,286.00, or true value of land and improvements of $3,204,146.00.

"12. Witness Schneider, a qualified appraiser employed by Assessor, testified for Assessor per Assessor's Exhibit A, that he estimated true value of the improvements by anticipating net income over an estimated 50-year life, in varying amounts, obtaining a figure of $7,960,672.00.

"13. To his figure of $7,960,672.00, witness Schneider added $2,950.00 which he testified represents the present value of the undisputed value of the land fifty years hence, for a total value of the property of $7,963,622.00, which he rounded to $8,000,000.00.

"14. Witness Schneider's estimates of income and expenses over a 50-year period are obviously speculative and uncertain.

"15. The commission accepts the Assessor's estimate of net income for 1975 of $564,394.00 for determining value as of January 1, 1975.

"16. In light of prevailing economic conditions January 1, 1975, the commission finds that the Assessor's figure of 14% is a fair capitalization rate for determining the true value of the entire property, land and improvements, when applied to net income.

"17. Based upon net income of $564,394.00, capitalized at 14%, the true value of the property, land and improvements, is $4,031,385.00, and the assessed value is $1,343,795.00, as of January 1, 1975. The true value of the improvements is thus $3,755,625.00, and the assessed value, $1,251,875.00.

### "CONCLUSIONS OF LAW

"2. The 'income' or 'economic' appraisal approach is most accurate in estimating the true value in money of an income property than the 'cost' appraisal approach, since it indicates and is based upon the rate of return a potential buyer would expect and demand, which in turn is largely determinative of the true or market value of an income property.

"3. Under the evidence, for 1975 taxation purposes, a 14% capitalization rate is proper for use in estimating value under the 'economic' appraisal method."

Upon petition for review being filed by the County, the circuit court held a hearing and, as indicated, entered the judgment from which this appeal was taken.

"We recognize that neither this court nor the trial court may substitute its discretion for discretion vested in the Commission and should not set aside its findings unless such findings are 'unsupported by competent and substantial evidence upon the whole record'; or are 'for any other reason, unauthorized by law'; or are 'arbitrary, capricious or unreasonable'; or unless the finding 'involves an abuse of discretion.'" Section 536.140, RSMo 1969; *State ex rel. Kahler v. State Tax Commission*, 393 S.W.2d 460, 464[2] (Mo.1965); *Stein v. State Tax Commission*, 379 S.W.2d 495, 498[3] (Mo. 1964).

The County contends that the court erred in affirming the Commission's decision, because the assessed valuation of the property as fixed by the Commission was the product of (1) a failure to consider a relevant value factor, and (2) a failure to take into consideration future earning capacity of the improvements in determining the amount of income to be capitalized; that for these reasons the decision of the Commission is not supported by competent and substantial evidence upon the whole record.

■ As to the relevant value *factor* allegedly not considered, the County argues that the Commission also should have considered the cost of replacement of improvements instead of relying on the capitalization of income method as the only factor to be considered in determining true value in money. We do not agree with this argument. It confuses factors with methods and methods with factors. There are several methods of determining the true value in money of real estate. Four are mentioned in this case: capitalization of income; market data; cost of construction; cost of replacement of improvements. Each of these methods is made up of several factors or elements, each of which must be present and considered in applying the method of which they are a part. The cost of replacement of improvements is not a factor or element of, and therefor is not relevant to, the capitalization of income method of determining true value in money of property for tax assessment purposes. It is a separate *method* of determining such value made up of its own factors or elements, a method the Commission, in its discretion, may adopt and employ where the facts and circumstances of the case and the law permit. *Xerox Corporation v. State Tax Commission,* 529 S.W.2d 413, 416–418[2–4] (Mo. banc 1975).

In general, the parties relied on the capitalization of income method of determining value. The testimony of Security's expert witness was devoted solely to that method. Testimony of the County's expert was that he "relied mainly" on this method but that he also "considered" the cost of replacement

of improvements method. However, he did not state that the latter method had any relation to or effect upon the capitalization of income method. In discussing the process he employed to find true value through the capitalization of income method, he acknowledged that his "report is just a little different than direct capitalization." Apparently, the Commission agreed with him in this respect. The Commission, in its discretion, adopted and employed the capitalization of income method for determining true value. In employing this method it was required to and did "take into account all factors [thereof] relevant to a determination of 'true value in money.'" *Stephen and Stephen Properties, Inc. v. State Tax Commission,* 499 S.W.2d 798, 802[2] (Mo. 1973). Considering the record, we find no abuse of discretion.

■ There is no merit in the County's contention that in using the estimate of net income for the whole year 1975 to determine true value as of January 1, 1975, the Commission was not considering and trying to determine the future earning capacity of the property. It is true that the Commission declined to consider evidence of the County estimating income and expenses for the next 50 years, but it did so because it found this evidence "speculative and uncertain." In so finding, the Commission was exercising its discretion. We find no abuse of discretion in this respect, considering the record.

The judgment is affirmed.

MORGAN, C. J., BARDGETT, DONNELLY, RENDLEN and SEILER, JJ., and McMILLIAN, Special Judge, concur.

FINCH, J., not sitting.