Donna SNIDER, Assessor for Pemiscot County, Missouri, Appellant,

v.

CASINO AZTAR/AZTAR MISSOURI GAMING CORP., Respondent.

No. SC 86181.

Supreme Court of Missouri, En Banc.

March 1, 2005.

---

Stephen P. Sokoloff, Kennett, Thomas W. Rynard, Jefferson City, for Appellant.

W. Edward Reeves, Caruthersville, Thomas L. Caradonna, Douglas M. Neider, St. Louis, for Respondent.

MICHAEL A. WOLFF, Judge.

### Introduction

What is the proper standard for appraising the real and personal property of a gambling casino for tax purposes?

The assessor in this case based her valuation on the "highest and best use" of the real and personal property—as a gaming facility. The casino owner objected because that standard is tied to a prospective buyer acquiring one of only 11 available gaming licenses from the state.

The state tax commission accepted the casino's argument and determined that the casino's property should be evaluated as if it were "country club" type property—some of which floats on or near the Mississippi River—rather than as a licensed gaming facility.

Aztar's property's highest and best use is as a gaming facility so the assessor's

method of valuation was correct. The judgment is reversed, and the case is remanded.

### Background

There are two separate entities, Casino Aztar and Aztar Missouri Gaming Corp., that own the property involved in this case. Casino Aztar owns two parcels of real property totaling about 37.5 acres along the Mississippi River at Caruthersville. Aztar Missouri Gaming Corp. owns personal property including a casino boat, the "City of Caruthersville," and an adjacent barge, the "Scott." Aztar Missouri Gaming Corp. also owns furniture, gaming equipment and other small items of personal property that are not involved in this case. The two entities are referred to collectively as "Aztar." Aztar does business as a licensed gaming facility.

The improvements to Aztar's real property include a 40,000 square-foot pavilion, two gazebos, an exposition center, parking for about 900 vehicles, and a four-acre park. The property was specifically designed for use as a gaming facility. The location meets the requirement of Missouri Constitution article III, section 39(e) that a gaming facility be located in artificial spaces within 1,000 feet of the Mississippi or Missouri Rivers.

The assessor classified Aztar's property as commercial property with a highest and best use as a gaming facility. The assessor valued the real property at a fair market value of $11,970,280 and an assessed value of $3,830,490. The assessor also valued Aztar's personal property at $17,210,160. Both valuations were based upon a replacement cost approach that took the actual cost of acquiring and improving the properties and adjusted those

costs downward for four years' worth of depreciation and depletion.[1]

Aztar filed a complaint with the county board of equalization and requested a lower value on its real property and its casino boat and barge. The board upheld the assessor's calculations of value. Aztar then sought review from the Missouri Tax Commission. Following a hearing, the commission held that the assessor had overvalued Aztar's real and personal property. The commission adopted the standard and approach to valuation proposed by Aztar, as well as the values Aztar's expert obtained by applying that standard and approach. The assessor appealed the commission's decision to the Pemiscot County Circuit Court. That court affirmed the commission's decision. After opinion in the Court of Appeals, Southern District, this Court granted transfer.[2] This Court has jurisdiction. Mo. Const. art. V, sec. 10.

### Standard of Review

■ This Court reviews the decision of the commission and not the decision of the trial court. *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Commission*, 669 S.W.2d 548, 552 (Mo. banc 1984). This Court is limited to determining whether the commission's decision is supported by competent and substantial evidence upon the whole record or whether it was arbitrary, capricious, unreasonable, unlawful, or in excess of the commission's jurisdiction. *Id.* (citing section 536.140.2 [3]). Whether the appropriate standard of value and approach to valuation were properly applied under the particular facts and circumstances of the case

is a question of law. *City of St. Louis v. Union Quarry & Construction Co.*, 394 S.W.2d 300, 303 (Mo.1965).

■ A tax assessor's valuation is presumed correct. *Hermel, Inc. v. State Tax Commission*, 564 S.W.2d 888, 895 (Mo. banc 1978). This presumption may be rebutted only if the taxpayer presents substantial and persuasive evidence that the assessor's valuation is erroneous. *Id.* The taxpayer bears the burden to establish the value that should have been placed on the property. *Cupples Hesse Corp. v. State Tax Commission*, 329 S.W.2d 696, 702 (Mo.1959).

### AZTAR'S REAL PROPERTY

#### Valuation

■ Section 137.115.1 requires that all real property be assessed according to its true value in money. "True value in money is the fair market value of the property on the valuation date, and is a function of its highest and best use, which is the use of the property which will produce the greatest return in the reasonably near future." *Aspenhof Corp. v. State Tax Commission*, 789 S.W.2d 867, 869 (Mo.App. 1990) (citations omitted).

■ For purposes of levying property taxes, the value of real property is typically determined using one or more of three generally accepted approaches. *See St. Louis County v. Security Bonhomme, Inc.*, 558 S.W.2d 655, 659 (Mo. banc 1977). Each valuation approach is applied with reference to a specific use of the property—its highest and best use. *Aspenhof*

---

1. The properties were about four years old on the date of valuation.

2. Aztar actually has three appeals that have been consolidated in this case. Aztar has one appeal for each of its two parcels of real property and one appeal for its personal property.

3. All statutory citations are to RSMo 2000 unless otherwise indicated.

*Corp.*, 789 S.W.2d at 869. The method used depends on several variables inherent in the highest and best use of the property in question. *Id.* Each method uses its own unique factors to calculate the property's true value in money. *Security Bonhomme, Inc.*, 558 S.W.2d at 659.

### Cost Approach

 The "cost approach" may be based on either reproduction cost or replacement cost. *See Security Bonhomme, Inc.*, 558 S.W.2d at 659. The reproduction cost, or cost of construction, is a determination of the cost of constructing an exact duplicate of an improved property using the same materials and construction standards. *See, e.g., Cupples Hesse Corp.*, 329 S.W.2d 696. The replacement cost is an estimate of the cost of constructing a building with the same utility as the building being appraised but with modern materials and according to current standards, design and layout. *See Aspenhof Corp.*, 789 S.W.2d at 869.

 The cost approach is most appropriate when the property being valued has been recently improved with structures that conform to the highest and best use of the property or when the property has unique or specialized improvements for which there are no comparables in the market. *See, e.g., Stephen and Stephen Properties, Inc. v. State Tax Commission*, 499 S.W.2d 798 (Mo.1973).

 While reproduction cost is the best indicator of value for newer properties where the actual costs of construction are available, replacement cost may be more appropriate for older properties. In the case of Aztar's property, due to its recent construction and specialized use, the reproduction cost of the property best indicates its true value in money. In fact, the assessor used the reproduction cost approach to determine the true value of Aztar's property by taking the actual cost of acquiring and improving the property and decreasing that amount to account for four years' worth of depreciation and depletion.

### Income Approach

 The "income approach" determines value by estimating the present worth of what an owner will likely receive in the future as income from the property. The income approach is "based on an evaluation of what a willing buyer would pay to realize the income stream that could be obtained from the property when devoted to its highest and best use...." *Equitable Life Assurance Society v. State Tax Commission*, 852 S.W.2d 376, 380 (Mo.App. 1993).

 When applying the income approach to valuing business property for tax purposes, it is not proper to consider income derived from the business and personal property; only income derived from the land and improvements should be considered. *Id.* at 381. This approach is most appropriate in valuing investment-type properties and is reliable when rental income, operating expenses and capitalization rates can reasonably be estimated from existing market conditions. The initial step in applying the income approach is to find comparable rentals and make adjustments for any differences. *See id.* at 381–82. Because casino facilities are not normally leased, there are no market rents data on which to base a valuation, and Aztar's property is not amenable to the income approach.

### Comparable Sales Approach

 The "comparable sales approach" uses prices paid for similar properties in arms-length transactions and adjusts those prices to account for differ-

ences between the properties. "Comparable sales consist of evidence of sales reasonably related in time and distance and involve land comparable in character." *See State ex rel. Missouri Highway and Transportation Commission v. Union Realty and Securities Co.,* 827 S.W.2d 768, 770 (Mo.App.1992). This approach is most appropriate when there is an active market for the type of property at issue such that sufficient data are available to make a comparative analysis. Thus, application of this approach to "special use" property, such as Aztar's casino property, is not appropriate.

The issue in this case is whether, regardless of the valuation method used, one type of commercial real property may be valued based on something less than its highest and best use while all other commercial property is valued at its highest and best use. In short, such subdivision is not allowed because Missouri Constitution article X, section 4(b) prohibits further dividing the classes of real property provided for in that section.

## The Commission's Discretion in Valuation

The purpose of valuing property for tax assessment purposes is to determine the true value in money of the property on the relevant day. *Hermel, Inc.,* 564 S.W.2d at 897. In making this determination, the commission has some discretion in deciding which approach best estimates the value of a particular property.

The commission's choice of valuation approaches must comply with the law. Both section 137.115 [4] and article X, section 4(b) of the Missouri Constitution [5] require that real property in Missouri be taxed according to its true value in money. True value is a function of the property's highest and best use. *Aspenhof Corp.,* 789 S.W.2d at 869.

Once the commission decides to use a particular approach, it must apply that approach properly and consider all of the factors relevant to that approach. *See Stephen and Stephen Properties, Inc.,* 499 S.W.2d at 802.

The commission, however, cannot ignore a lack of support in the evidence for adjustments made by the expert witnesses in the application of a particular valuation approach. *Drey v. State Tax Commission,* 345 S.W.2d 228, 234–36 (Mo. 1961). Further, the commission cannot base its decision on opinion evidence that fails to consider information that should have been considered under a particular valuation approach. *Id.; Security Bonhomme, Inc.,* 558 S.W.2d at 659.

## The Commission's Valuation Standard

The commission accepted the valuation standard and approach proposed by Aztar. The commission relied predominantly on the income approach to value the real property, supported by the comparable sales approach and the replacement cost approach. Aztar based all three of

---

4. "Except as otherwise provided in subsection 3 of this section and section 137.078, the assessor shall annually assess all personal property at thirty-three and one-third percent of its true value in money as of January first of each calendar year. The assessor shall annually assess all real property, including any new construction and improvements to real property, and possessory interests in real property at the percent of its true value in

money set in subsection 5 of this section." Section 137.115.1.

5. "Property in classes 1 and 2 and subclasses of those classes, shall be assessed for tax purposes at its value or such percentage of its value as may be fixed by law for each class and for each subclass." Mo. Const. art. 10, sec. 4(b).

the approaches on use of its property as a "country club."

Although Aztar's expert conceded that the highest and best use of the property is as a gaming facility, he maintained that because possession of a gaming license is a critical factor in the price actually paid for the property, accepted valuation approaches should be applied to casino property using an alternate second-best use of the property as the applicable standard.

In advocating a second-best use standard, Aztar misinterprets the law to hold that property's true value in money is something less than its highest and best use when that highest and best use cannot be enjoyed by anyone who owns the property.

■ It is true that property can only be valued according to a use to which the property is readily available. But this does not mean that in order for a specific use to be the highest and best use for calculating the property's true value in money, that particular use must be available to anyone deciding to purchase the property.

■ Highest and best use does not look at the characteristics of the owner—such as possession of a casino use license or the goodwill of a corporate owner. Highest and best use looks only at the qualities of the property itself—such as the location, improvements and terrain of the property. Because of these rules, *Equitable Life Assurance Society*, 852 S.W.2d at 381, when addressing the true value in money of a hotel, correctly states:

> [W]hat is at issue for tax assessment purposes is not the value of the ... hotel; it is the value of the real property which is being used to operate a ... hotel. Therefore, the value of the ... franchise and business acumen must be excluded if one is to value the property.

■ In accepting Aztar's proposed valuation standard, the commission ignored the rule of valuation for tax assessment purposes that a property's true value in money must be determined by valuing the property at its highest and best use regardless of the personal characteristics of a potential owner of the property. Valuing Aztar's property using any other standard undervalues the property. Here the commission undervalued the property by considering the fact that a casino license must be obtained by the property owner to use the property as a casino. That is not a factor in the highest and best use analysis.

The parties agree that Aztar's property's highest and best use is as a gaming casino. The commission, however, crafted a new legal standard for valuing licensed gaming facilities—the next most profitable commercial activity. Under the commission's decision, when the highest and best use of property can occur only if a license is issued, the property should be valued according to the next best use—the best use that could be made without the license. By applying one standard to most commercial properties but a different standard to casinos, the commission created a valuation subclass of commercial property. This violates both article X, section 4(b) of the Missouri Constitution and section 137.115.

■ As a matter of law the commission had to use the highest and best use standard when determining the value of Aztar's property for taxation purposes. A determination of the true value in money cannot reject the property's highest and best use and value the property at a lesser economic use of the property. *Union Quarry & Const. Co.*, 394 S.W.2d at 304–307.

### The Evidence Before the Commission

The assessor submitted written testimony to the commission, but all of her evi-

dence was excluded regarding the real and personal property assessments. As a result, the only evidence submitted at the hearing regarding valuation was from Aztar's two expert witnesses. Aztar's appraisal expert testified that the highest and best use of the property was as a casino, but he compared Aztar's property to "country club" property when applying the income approach as supported by the replacement cost approach and the comparable sales approach. In fact, there is evidence in the record that it would not be economically feasible to convert Aztar's property to an alternate use, including use as a hotel, mixed use, institutional use, or retail use. So any alternate use proposed by the expert was based entirely on speculation.

None of the rental comparables used by Aztar's expert in applying the income approach were casino properties. That is precisely why the income approach is inappropriate in this case—casino property is not rental property, so no rental comparables are available with which to apply the income approach. Aztar's application of the comparable sales approach is similarly flawed in that the evidence established that there were no sales of similar properties in the market to which the property at issue could be compared. If there is an absence of comparables in the market on which to base a determination, the appropriate solution is to reject the use of this approach, not to find the next best economic use for which comparables in the market can be found. See Union Realty and Securities Co., 827 S.W.2d at 770–771.

In adopting Aztar's income approach supported by replacement costs and the second-best use standard, the commission ignored evidence showing that, in light of the recent construction of the improve-

ments[6] and the specialized use of the property, the reproduction cost approach would most accurately indicate the true value in money of Aztar's property. The commission's decision relied on expert testimony that ignored or improperly applied the appropriate valuation standard and approach.

The legal premise that the commission applied is incorrect as a matter of law, and its decision is not supported by substantial evidence.

## The Valuation Standard and Approach Used by the Assessor

The assessor determined the value of Aztar's property by applying the reproduction cost approach based on the highest and best use standard. The reproduction cost method is appropriate, as discussed above, when the improvements are recent and the property is "special use."

Contrary to Aztar's assertions, the assessor did not directly include the value of the gaming license in the value of Aztar's real property. It is not possession of the gaming license that imbues Aztar's property with its highest and best use, it is the demand for a casino in the community and the physical attributes of the property that make it suitable to being developed to that use. In determining the highest and best use, "the uses of the land for which it is reasonably adapted or suited may be considered, including a special adaptation to a particular use, having regard to the existing business wants of the community." Union Quarry & Construction Co., 394 S.W.2d at 305 (citations omitted).

The special adaptation exists here because the property's location meets the requirement of article III, section 39(e) of the Missouri Constitution that a gaming facility be located in artificial spaces within

---

6. The improvements were constructed four years ago.

1,000 feet of the Mississippi or Missouri Rivers. In fact, based only on the suitability of the location as a gaming facility, Aztar acquired the property and invested over $12 million in improvements *before* acquiring the license to operate a casino. The assessor rightly used the property's highest and best use as a gaming facility when determining the true value in money of Aztar's real property.

### *AZTAR'S PERSONAL PROPERTY*

 As with real property, personal property is to be assessed with reference to its true value in money. True value in money means the fair market value of the property on the valuation day. *Hermel,* 564 S.W.2d at 897. The assessor determined that the fair market value of the personal property was $17,210,160.

The assessor's valuation is presumed to be correct, and it is Aztar's burden to rebut the presumption. *Daly v. P.D. George Co.,* 77 S.W.3d 645, 648 (Mo.App. 2002). Aztar's expert appraiser did not use any recognized valuation method in formulating his opinion as to the valuation of the boat, the "City of Caruthersville," or the adjacent barge, the "Scott."[7]

 The commission's rejection of the assessor's cost-based approach and its acceptance of Aztar's nontraditional methods suffered from the same legal deficiency as Aztar's position on the valuation of its real property. Aztar failed to carry its burden of showing that the assessor was incorrect, and the commission erred in applying a criterion other than the property's highest and best use.

### Conclusion

The standard the commission adopted for casino properties impermissibly divides

the commercial class of property created by Missouri Constitution article X, section 4(b) into multiple subclasses. The assessor's cost-based approach to valuation of the real and personal property was legally correct and was not shown to have been factually incorrect.

The judgment is reversed, and the case is remanded.

All concur.

---

7. Aztar's appraisal evidence was similar in methodology to that disapproved in *Quincy Soybean Co. v. Lowe,* 773 S.W.2d 503 (Mo. App.1989).