Lisa S. Van Amburg, Judge
Ameren appeals the judgment of the circuit court affirming the State Tax Commission's valuation of Ameren's real and personal property for purposes of county tax assessments. We reverse and remand for a determination of value applying proper methodology.
Background
Ameren is a regulated public utility that distributes natural gas to 25 counties in Missouri. Ameren's pipeline consists of both real and personal property subject to county taxation. This appeal involves its property tax assessment in Cape Girardeau County as a representative case among four in the Eastern District and 16 statewide.
The Commission oversees tax assessments conducted by individual counties. As part of its regulatory function, the Commission requires assessors to collect "such annual reports as shall enable said commission to ascertain the assessed and equalized value of all real and tangible personal property listed for taxation." § 138.380.2. To aid in the collection of such information, the Commission has a statutory duty to promulgate uniform reporting forms and instructions for use by assessors and taxpayers. § 138.380(2), § 138.320. County assessors must strictly comply with all such instructions issued by the Commission. § 138.320. And of course, taxpayers must complete and file the forms in accordance with the instructions.
In 2013, the Commission published a new form and instructions for natural gas companies to report their real and personal property for purposes of valuation and assessment. Both the form and the accompanying instructions directed taxpayers to start with their original costs, as reported *781 to federal and state regulatory bodies, and then apply depreciation, using IRS guidelines and in specific percentages indicated on the form, to arrive at market value. Prior to 2013, value was determined from original cost only, without depreciation.
Ameren submitted its report in substantial compliance with the Commission's form and instructions.[1] For its assets in Cape Girardeau County, Ameren reported original costs of approximately $42.9 million and a depreciated value of $19.9 million, for an assessed value of $6.4 million. Noting a decrease in relation to previous years, the respondent Assessor questioned Ameren's figures, believing that Ameren had applied double depreciation. As such, the Assessor used an initial figure of $39.5 million and made no deduction for depreciation, for an assessed value of $12.7 million.
A similar discrepancy occurred in 15 other counties. In each county, Ameren appealed the Assessor's determination to the county Board of Equalization, which sustained the Assessor's valuation. Ameren then appealed all 16 determinations to the Commission, where the cases were consolidated and the parties appeared and adduced voluminous evidence. As relevant here, Ameren established that its figures reflected its actual original costs, as reported to regulatory bodies, minus depreciation, all as required by the Commission's reporting form and instructions. The Assessors established that the 2013 form and instructions deviated from past practices and acknowledged that their suspicion of double depreciation was unfounded. The Assessors then sought to demonstrate that their own valuations were nonetheless valid, based on an appraisal that they commissioned later using different methodologies. As relevant here, that appraisal indicated that the "reproduction cost new" of Ameren's assets in Cape Girardeau County was $81.4 million, yielding an after-depreciation value of $39.8 million, consistent with the Assessor's initial figures. Thus, the proposed valuations can be compared as follows:
Ameren Assessor Appraisal Cost $42.9 M $39.5 M $81.4 M original original new Depreciation 54% none 50% Value $19.9 M $39.5 M $39.8 M Assessed (32%) $6.4 M $12.7 M $12.7 M
The Commission affirmed the Assessors' valuations, reasoning that Ameren failed to prove the value of its assets with market evidence whereas the Assessors provided support for their valuations with the appraisal. The trial court affirmed the Commission's decision by the same rationale. Ameren appeals and asserts that the Commission erred in that (1) the Assessor misapplied the cost approach method of valuation by failing to account for depreciation, (2) the Commission failed to review Ameren's *782 claim of methodological error but instead weighed the evidence of valuation under an entirely different method, (3) Ameren did present evidence of value, and (4) there is no presumption in favor of the Assessor's valuation.
While this appeal was pending, the Western and Southern Districts of this court issued opinions in identical representative cases, reversing the Commission's decision and remanding for a determination of value using proper methodology. Union Elec. Co. v. Estes , No. WD80659, 544 S.W.3d 246, 2017 WL 4244396 (Mo. App. W.D. Sept. 26, 2017), motion for rehearing or transfer denied Oct. 31, 2017; Union Elec. Co. v. Tibbs , No. SD34934, 534 S.W.3d 352, 2017 WL 4927027 (Mo. App. S.D. Oct. 31, 2017). We now concur with our colleagues in analysis and result.
Standard of Review
This Court reviews the decision of the Commission and not the decision of the trial court. Snider v. Casino Aztar/Aztar Missouri Gaming Corp. , 156 S.W.3d 341, 346 (Mo. 2005). We review to determine "whether the Commission's decision is supported by competent and substantial evidence upon the whole record, or whether it was arbitrary, capricious, unreasonable, unlawful, or in excess of the Commission's jurisdiction." Id., citing § 536.140.2. Determining value is an issue of fact for the Commission. Aspenhof Corp. v. State Tax Commission , 789 S.W.2d 867, 869 (Mo. App. E.D. 1990). However, "whether the appropriate standard of value and approach to valuation were properly applied under the particular facts and circumstances of the case is a question of law." Id. Ameren challenges the Commission's application of the standard and approach used to value its assets in this case, so our review is de novo.
Analysis
We address Ameren's first and second points together, as they are related and dispositive. First, Ameren contends that the Commission erred in affirming the Assessor's valuation because he misapplied the cost approach method by failing to account for depreciation. The Assessor concedes the mistake but insists that his valuation is nonetheless supported by the evidentiary record before the Commission, specifically an appraisal conducted after his assessment. Ameren then responds, in its second point, that the Commission erred by ignoring the Assessor's methodological error and instead relying on that new appraisal, which used an entirely different methodology.
Real and tangible personal commercial property is assessed at a tax rate of 32% of its "true value in money," meaning fair market value. § 137.115. Real property may be valued using three different approaches: cost, income, and comparable sales. Snider , 156 S.W.3d at 347. The Commission "has some discretion in deciding which approach best estimates the value of a particular property." Id. at 348. Personal property, however, must be valued using the cost approach. § 137.122. The parties agree that the cost approach is the proper method here for both Ameren's real and personal property. The cost approach generally starts with reproduction or replacement cost of the property and then applies depreciation to arrive at value. See Snider , 156 S.W.3d at 347 ; Stephen & Stephen Properties, Inc. v. State Tax Comm'n , 499 S.W.2d 798, 803 (Mo. 1973) ; and Drey v. State Tax Commission , 345 S.W.2d 228, 235 (Mo. 1961). Reproduction cost is based on the actual original cost of construction, whereas replacement cost is an estimate of a new construction with modern materials and according to current standards. Snider , 156 S.W.3d at 347.
*783 Here, in 2013, the Commission mandated use of the reproduction cost approach, expressly instructing taxpayers to report "original or historical costs" and calculate depreciation following IRS guidelines. "Once the Commission decides to use a particular approach, it must apply that approach properly and consider all of the factors relevant to that approach." Snider , 156 S.W.3d at 348. "Whenever consideration is given to the cost of reproduction as an element in the determination of market value, it is recognized that a proper deduction must be made for depreciation." Stephen & Stephen Properties, Inc. , 499 S.W.2d at 803. The Commission recognized these principles in its decision, observing, "the cost approach may use original costs ... defined in § 137.122," and, "once original cost is determined, depreciation ... is calculated." The Commission also confirmed factually that Ameren complied with its instructions by "report[ing] a cost figure to the county assessors" as required by the Commission's forms and instructions. Yet, as stated above, the Assessors admit that they did not apply depreciation. This is a clear error of methodology.
Despite this error, the Assessor insists that the Commission's valuation is nonetheless supported by the evidence and therefore should be upheld. Specifically, the Assessor relies on an appraisal performed sometime after his initial determination using entirely different valuation methods. That appraisal combined income, market, and cost "new" approaches-every possibility except the original (historical) cost approach mandated by the Commission for the year in question-and it conveniently yielded the same assessment after depreciation as the Assessor's figure without it by doubling the starting point. Relying on this inflated new appraisal using different methodologies to absorb the Assessor's previous error, the Commission essentially shifted the goal posts on administrative appeal.[2]
Likewise, the Assessor now attempts to shift our focus to the weight of the evidence of valuation without regard to methodology. But valuation and methodology are separate and distinct claims of error under § 137.430.1. To be sure, the Commission can assign its own valuation as an issue of fact. Aspenhof , 789 S.W.2d at 869. But here, the Commission didn't simply make an independent valuation based on the evidence properly before it.[3] Rather, the Commission adopted the Assessor's initial valuation as its own and thus ratified the Assessor's clear methodological error using a fundamentally different analysis than the one it demanded in the first place. That error of law is the focus of Ameren's appeal, and it is well-founded. Similar facts existed in Drey (cited above) where the Missouri Supreme Court explained that "whatever substantiality that ... evidence *784 might otherwise have is destroyed by ... the assessor's unaccounted for and unsupported failure to give weight to the fact of the extensive depletion" of value. 345 S.W.2d at 235. Put simply, an expert witness cannot be employed to erase a clear error in methodology. Points I and II are granted and dispositive. As such, we need not reach points III and IV regarding Ameren's burden of proof and evidence of value.
Conclusion
The trial court's judgment is reversed and remanded for a determination of value applying proper methodology as prescribed by Commission publications in effect for the relevant period.
Colleen Dolan, P.J., and Mary K. Hoff, J., concur.

Ameren made minor modifications to adapt its internal records to the official form. For example, the form solicited cost information as stated in Ameren's annual report to the Federal Energy Regulatory Commission, which is organized by account number rather than by county and lacks asset classification. Thus, Ameren itemized its costs by county and classification rather than by FERC account for the assessors' convenience.

At oral argument, counsel for the Assessors urged this court to ignore the methodology prescribed on the Commission's 2013 form because the form was merely "posted on the internet by a staff person," as if the means of issuance somehow relieved the Commission of responsibility for its own official publication. Such a disclaimer offends basic principles of agency. There is nothing in the record to suggest that the 2013 form and instructions were anything less than official directives of the Commission issued pursuant to its charge under § 137.380(2) and § 137.320.

This appraisal adduced by the Assessor yielded a valuation over $300,000 higher than the Assessor's own initial determination. Though not the emphasis of Ameren's appeal, we note that § 138.060.1 states: "At any hearing before the state tax commission or a court of competent jurisdiction of an appeal of an assessment ... the assessor shall not advocate nor [sic] present evidence advocating a valuation higher than that value finally determined by the assessor or the value determined by the board of equalization, whichever is higher, for that assessment period."