

# In the
# Missouri Court of Appeals
# Western District

CATHY RINEHART, ASSESSOR
CLAY COUNTY, MISSOURI,

Appellant,

v.

LACLEDE GAS COMPANY,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

WD83105

OPINION FILED:  August 18, 2020

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Kathryn E. Davis, Judge

Before Division Three:  Gary D. Witt, Presiding Judge, Lisa White Hardwick, Judge and
Thomas N. Chapman, Judge

Cathy Rinehart, Assessor of Clay County, Missouri, ("Assessor") appeals from the Circuit Court of Clay County's judgment affirming the State Tax Commission's ("Commission") Order finding the true value in money ("TVM")[1] of Laclede Gas Company's ("Laclede")[2] personal property was $7,100,000.00 in 2014, and $8,900,000.00

---

[1] "True value in money is the fair market value of the property on the valuation date, and is a function of its highest and best use, which is the use of the property which will produce the greatest return in the reasonably near future."  *Snider v. Casino Aztar/Aztar Mo. Gaming Corp.*, 156 S.W.3d 341, 346 (Mo. banc 2005) (quoting *Aspenhof Corp. v. State Tax Comm'n*, 789 S.W.2d 867, 869 (Mo. App. E.D. 1990)).

[2] Laclede has since been acquired by Spire Missouri, Incorporated, but we refer to it as Laclede for continuity and convenience.

in 2015. The Commission determined the assessed value of Laclede's personal property was $2,366,667.00 in 2014 and $2,966,667.00 in 2015. The Commission also found the TVM of Laclede's real property was $52,500,000.00 in 2015, and its real property's assessed value was $16,800,000.00 in 2015.[3] We reverse and remand.

**Factual and Procedural Background**

Laclede is a utility company that provides natural gas service throughout Missouri by means of gas service lines, mains, and other facilities, and it is regulated by the Federal Energy Regulatory Commission ("FERC") and the Missouri Public Service Commission ("PSC"). Laclede reports the cost of its assets to the PSC, which impacts the rate Laclede charges its customers for its service.

In September 2013, Laclede purchased both real and personal property from Missouri Gas Energy ("MGE") located in Clay County, Missouri.[4] Its real property consists of underground pipes and gas mains of varying ages, materials, and sizes, and its personal property consists of meters and regulators. Laclede's property also includes new assets that are being constructed and assets that are provided by others to assist in construction and expansion of Laclede's gas distribution system. A dispute arose between the Assessor and Laclede as to the proper TVM of Laclede's real and personal property located in Clay County.

---

[3] The assessed value of Laclede's real property in Clay County for the 2014 tax year is not at issue in this appeal.

[4] Laclede also purchased property located in Platte County, Missouri. The Commission consolidated appeals from Clay County and Platte County in the underlying matter. However, the Platte County Assessor did not appeal the Commission's decision, therefore the assessed value of Laclede's personal and real property located in Platte County is not at issue in this appeal.

Lindsay Link ("Link"), a Laclede accountant, prepared Laclede's tax declarations using Laclede's Fixed Asset Record, which is filed with the PSC and audited by an outside accountancy firm. The Fixed Asset Record contains the vintage year,[5] FERC account number, location of property within Clay County, and the original cost of all property. However, the Fixed Asset Record does not include all of Laclede's real and personal property because the PSC does not assess rates based on construction work in progress and assets used during construction. Link determined that prior to Laclede's purchase, MGE had improperly included its meter installation costs in its personal property tax declarations, which resulted in the over-valuation of MGE's personal property.

Rochelle Lafave, Director of Personal Property for the Assessor, disagreed with Laclede's personal property tax declarations and calculated the TVM of Laclede's personal property utilizing MGE's 2012 personal property tax declarations. Gary Maurer ("Maurer"), a general appraiser for the Assessor, disputed Laclede's real property tax declarations. Maurer determined a gas line's life expectancy to be between 50 and 75 years, and Maurer applied a 70-year depreciation schedule to Laclede's assets. Maurer testified that in calculating the TVM of Laclede's real property, he used 1997 as the vintage year of all property installed before 1997 because the data provided by Laclede to the Assessor did not include any vintage years for property installed before 1997.[6] Maurer acknowledged that the inaccurate vintage years would affect the depreciation schedule and therefore result in a higher assessed value for the older personal property.

_____

[5] The vintage year is the year the pipe was placed into service.
[6] It is unclear from the record, which appraisal approach Maurer used in calculating the TVM of Laclede's real property.

3

Laclede's declared TVM and the Assessor's TVM were as follows:

|  | 2014 Personal | 2015 Personal | 2015 Real |
|---|---|---|---|
| Laclede's Declaration | $6,200,000 | $6,400,000 | $38,000,000 |
| Assessor's TVM | $11,300,000 | $11,100,000 | $79,200,000 |

Laclede appealed the Assessor's valuations to the Clay County Board of Equalization ("Board"). The Board adopted the Assessor's valuations. Laclede appealed the Board's valuations to the Commission, and this appeal was heard by a Senior Hearing Officer on March 29, 2017, and March 30, 2017.

At the hearing, the Assessor called Mika Koyama ("Koyama"), a Systems and Standards Analyst for the Assessor's Office, to testify as an expert as to her valuations of Laclede's real and personal property. Koyama utilized the Unit Value Method[7] using the cost approach in calculating Laclede's TVM. Koyama determined that Laclede purchased MGE for $975,000,000 and she subtracted the value of MGE's intangible assets, $370,000,000, from the sales price for a total value of the property being $605,000,000. She then determined that 14% of MGE's assets were located in Clay County. Koyama applied a fifty-year depreciation schedule with a 20% floor. Ultimately, Koyama determined the TVM of Laclede's personal property to be $12,000,000 for both 2014 and 2015, and the TVM of Laclede's real property to be $73,763,600 for 2015.

---

[7] The Unit Value Method "is an appraisal technique that produces a valuation of a whole property without geographical or functional division of the whole. This technique is most applicable in the valuation of public utility and railroad properties in which the operating property of the business enterprise in its entirety is valued as a unit. After the unit value is determined, each taxing jurisdiction is apportioned or allocated the portion of the unit value applicable to the amount of distributable property contained therein." ASSESSOR MANUAL, Appendix (Mo. State Tax Comm'n 2020).

4

Laclede called Robert Reilly ("Reilly") as its expert witness, and Reilly calculated Laclede's property value utilizing the Unit Value Method using the cost approach, the income approach, and the comparable market approach, giving 40% weight to the cost approach, 40% weight to the income approach, and 20% weight to the comparable market approach. Reilly calculated the total unit value was $1,280,000,000 (cost approach); $1,110,000,000 (income approach); and $1,350,000,000 (comparable sales approach). Applying his assigned weights, Reilly calculated the combined total unit value was $1,226,000,000.

From the total unit value, Reilly subtracted the total value of financial assets and intangible assets ($310,000,000) for an adjusted total unit value of $916,000,000. Reilly calculated that the property located within Clay County was 5.3% of the total unit value for a sub-unit value of $48,500,000. He then found that 14.6% of the sub-unit value comprised Laclede's personal property ($7,100,000) and 85.4% of the sub-unit value comprised Laclede's real property ($41,400,000).

The Commission summarized the relevant valuations as follows:

|  | 2014 Personal | 2015 Personal | 2015 Real |
|---|---|---|---|
| Laclede's Declaration | $6,200,000 | $6,400,000 | $38,000,000 |
| Assessor's TVM | $11,300,000 | $11,100,000 | $79,200,000 |
| Board's TVM | $11,300,000 | $11,100,000 | $79,200,000 |
| Reilly's Testimony | $7,100,000 | $8,900,000 | $52,500,000 |
| Koyama's Testimony | $12,000,000 | $12,000,000 | $73,800,000 |

On September 6, 2017, the Hearing Officer entered his Decision and Order ("Decision"), affirming the Board's TVM. Laclede appealed to the Commission, and on August 7, 2018, the Commission entered an Order Setting Aside Hearing Officer Decision

5

upon Application for Review ("Order") adopting the valuations set forth by Reilly. The Commission determined Laclede's TVM and Assessed Value as follows:

|  | 2014 Personal | 2015 Personal | 2015 Real |
|---|---|---|---|
| Commission's TVM | $7,100,000 | $8,900,000 | $52,500,000 |
| Commission's Assessed Value | $2,366,667 | $2,966,667 | $16,800,000 |

On September 5, 2018, the Assessor filed a Petition for Review in the Circuit Court of Clay County. The circuit court conducted a hearing on July 12, 2019, and entered its Judgment affirming the Commission's Order on August 2, 2019. This appeal timely followed.

## Standard of Review

"On an appeal from a judgment of a trial court addressing the decision of an administrative agency, we review the decision of the administrative agency and not the judgment of the trial court." *Union Elec. Co. v. Estes*, 534 S.W.3d 352, 365 (Mo. App. W.D. 2017) ("*Estes*") (quoting *Rinehart v. Bateman*, 363 S.W.3d 357, 362-63 (Mo. App. W.D. 2012)). "This court reviews the decision of the [Commission] and not the hearing officer[.]" *Rinehart*, 363 S.W.3d at 363 (quoting *Cohen v. Bushmeyer,* 251 S.W.3d 345, 350 n. 4 (Mo. App. E.D. 2008).[8] "Notwithstanding, in our mandate, we reverse, affirm or

_____

[8] In *Rinehart*, we reviewed the Commission's decision together with the hearing officer's order because the Commission had incorporated the entirety of the decision of the hearing officer into its order. 363 S.W.3d at 363 (citing *Loven v. Greene Cnty.*, 94 S.W.3d 475, 477 (Mo. App. S.D. 2003); *Peruque, LLC v. Shipman*, 352 S.W.3d 370, 374 (Mo. App. E.D. 2011)). The Assessor argues that in the instant case the Commission incorporated the Hearing Officer's Decision and Order, and as a result we should consider both the Commission's Order and the Hearing Officer's Decision and Order. However, the Commission expressly stated: "*Segments* of the Decision and Order of the Hearing Officer, including the findings of fact and conclusions of law therein, have been incorporated without reference, as if set out in full, in this final decision of the [Commission]." (emphasis added). Because only segments of the Hearing Officer's Decision and Order were incorporated into the Commission's Order, and because the Hearing Officer and the Commission reached different outcomes our review is limited to the Commission's Order.

6

otherwise act upon the judgment of the trial court." *Estes*, 534 S.W.3d at 365 (quoting *Rinehart*, 363 S.W.3d at 363). We must determine "whether the [Commission's] findings are supported by competent and substantial evidence on the record as a whole; whether the [Decision and Order] is arbitrary, capricious, unreasonable or involves an abuse of discretion; or whether the [Decision and Order] is unauthorized by law." *Id.* (quotation omitted). However, "we review the [Commission's] conclusions of law and its decision *de novo*, and we make corrections to erroneous interpretations of the law." *Id.* (quotation omitted). "Whether the appropriate standard of value and approach to valuation were properly applied under the particular facts and circumstances of the case is a question of law." *Id.* (quoting *Snider v. Casino Aztar/Aztar Mo. Gaming Corp.*, 156 S.W.3d 341, 346 (Mo. banc 2005)).

## Discussion

The Assessor raises one point on appeal asserting that the Commission erred in setting aside the Board's valuations because Laclede failed to meet its burden of proof to present substantial and persuasive evidence to rebut the presumption of correct assessment by the Board in that the evidence of TVM produced by Laclede failed to properly apply accepted appraisal methodologies. Laclede first argues that the General Assembly legislatively abolished the rebuttable presumption that the Board's valuations are correct, and even if the presumption persists Laclede met its burden to rebut them. Therefore, we must first determine whether the 1992 legislative amendments abolished the presumption in favor of boards of equalizations' valuations.

7

**I. The legislative amendments to section 138.431 preserved the presumption in favor of the Board's valuations.**

While no statute establishes the rebuttable presumption that the boards of equalizations' valuations are correct, historically the judiciary has recognized a rebuttable presumption that the assessments of county assessors, boards of equalization, and the Commission are correct. *State ex rel. Thompson v. Bethards*, 9 S.W.2d 603, 604 (Mo. banc 1928) ("The presumption that such added valuation is the true value attaches just as well to the action of the state board of equalization and county board of equalization as it does to the valuation of the assessor."); *May Dep't Stores Co. v. State Tax Comm'n*, 308 S.W.2d 748, 759 (Mo. 1958) ("There is a presumption of validity and of good faith in the actions of taxing officials, and of the correctness of assessments[;] and such presumptions attach to the actions of the county and state boards of equalization, as well as to the valuations of assessors.") (internal citations omitted); *State ex rel. Kahler v. State Tax Comm'n*, 393 S.W.2d 460, 465 (Mo. 1965) (holding that presumption that county boards of equalization's assessments are valid is rebuttable); *Quincy Soybean Co., Inc. v. Lowe*, 773 S.W.2d 503, 504 (Mo. App. E.D. 1989) ("A presumption exists that the assessed value fixed by the assessor, [b]oard of [e]qualization, or commission is correct."). Because "[t]he legislature is presumed to know the law that has been amended, and to have used particular words in light of prior judicial and legislative action," we presume the legislature knew that valuations by assessors, boards of equalization, and the Commission were presumed to be correct. *State v. Davis*, 675 S.W.2d 410, 415 (Mo. App. W.D. 1984) (citing *City of St. Joseph v. Hankinson*, 312 S.W.2d 4, 8 (Mo. 1958)). In 1992 the legislature amended

8

sections 138.060.1 and 138.431.3[9] RSMo. Cum. Supp. 1992 to insert the language: "There shall be no presumption that the assessor's valuation is correct."

Laclede argues that because the legislature abolished the presumption in favor of the Assessor's valuation that when the Board sustained the Assessor's valuation, the practical effect of the amendment to 138.431.4 was to abolish the presumption in favor of the Board's valuations. We disagree. "In matters of statutory interpretation, this Court's role is to ascertain the intent of the legislature from the language used and to consider the words used in their ordinary meaning." *Macon CT. Emergency Servs. Bd v. Macon Caty. Comm'n*, 485 S.W.3d 353, 355 (Mo. banc 2016). "Where a statute's language is clear, courts must give effect to its plain meaning and refrain from applying the rules of construction unless there is some ambiguity." *St. Louis CT. v. Prestige Travel, Inc.*, 344 S.W.3d 708, 714 (Mo. banc 2011) (quoting *Ross v. Dir. Of Revenue*, 311 S.W.3d 732, 735 (Mo. banc 2010)). Moreover, "[t]his Court will not add words to a statute under the auspice of statutory construction" strict or otherwise. *Li Lin v. Ellis*, 594 S.W.3d 238, 242 (Mo. banc 2020) (quoting *Macon*, 485 S.W.3d at 355). Interpreting section 138.431.4, while giving its terms their plain and ordinary meaning, we find that the legislature abolished the rebuttable presumption in favor of the assessor's valuations but left the rebuttable presumption in favor of valuations by boards of equalization and the Commission intact. If the legislature wished to eliminate the rebuttable presumption in favor of the boards of equalizations' or commission's valuation, it knew how and chose not to do so.

---

[9] In 1992, the amendment adding the relevant language was made to subsection 3 of 138.431. Subsequent amendments to the statute moved the relevant language of subsection 3 to subsection 4.

9

Laclede further argues that because section 138.431.4 provides authority for the Commission to review the Board's valuation rather than the Assessor's valuation that the legislature's failure to abolish the presumption in favor of the Board would render the legislative amendment a useless act. We disagree. "When the legislature amends a statute, it is presumed that its intent was to bring about some change in the existing law." *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 777 (Mo. App. E.D. 2015). "This Court should never construe a statute in a manner that would moot the legislative changes, because the legislature is never presumed to have committed a useless act." *Id*. "To amend a statute and accomplish nothing from the amendment would be a meaningless act." *Id*. The board of equalization conducts an independent review of the assessors' valuations, and therefore, they are separate and distinct valuations even if they ultimately find the assessor's valuation to be persuasive. Furthermore, while county assessors do not have standing to appeal the boards of equalizations' valuations, *O'Flaherty v. State Tax Comm'n of Mo.*, 680 S.W.2d 153, 154 (Mo. banc 1984), nothing precludes a county assessor from presenting evidence of its initial valuation to the Commission when a taxpayer appeals a board of equalization's valuation. Therefore, the legislative amendment abolishing the presumption in favor of the county assessor's valuation was not a meaningless act, as the assessor's valuation may be presented at any stage of the appeals process. In reviewing the board of equalizations' valuation, the Commission may consider the assessor's initial valuation, but, after the 1992 statutory amendment, the Commission can no longer apply a rebuttable presumption that the assessor's initial valuation was accurate. Therefore, the Commission was obligated to give the Board's valuation a presumption of validity.

**II. Laclede successfully rebutted the presumption that the Board's valuations were presumed to be correct.**

Having found that there is a rebuttable presumption that the Board's valuations are correct, we must now determine whether the Commission's Order finding that Laclede overcame this presumption is supported by substantial and competent evidence. *Estes*, 534 S.W.3d at 365. "Substantial evidence is evidence that if true has probative force; it is evidence from which the trier of fact reasonably could find the issues in harmony therewith." *Preston v. Dir. of Revenue*, 202 S.W.3d 608, 609 (Mo. banc 2006). Laclede argues that the Board's valuations were rebutted because the Board failed to properly account for depreciation in arriving at its valuations.

In *Estes*, we reversed the Commission's determination of the TVM of Ameren Missouri's, a regulated public utility, natural gas pipeline within the county, because the Commission did not account for depreciation. *Estes*, 534 S.W.3d at 377. The Commission affirmed the assessor's valuations, which had been sustained by the board of equalization. *Id*. at 376. We held that "[d]epreciation must be considered when valuing property using the reproduction cost approach." *Id*. (citing *Stephen & Stephen Props., Inc. v State Tax Comm'n*, 499 S.W.2d 798, 803 (Mo. 1973) ("Whenever consideration is given to the cost of reproduction as an element in the determination of market value, it is recognized that a proper deduction must be made for depreciation." (internal quotation omitted)). Because the board of equalization had not considered any depreciation we found the Commission's adoption of those valuations was "unlawful and unfair." *Id*.

11

Although, in the instant case, the Assessor accounted for some, but not all, depreciation, we similarly find the Commission's valuations unlawful and unfair. Specifically, Maurer testified regarding the methodology he used in establishing the Assessor's values as follows:

[Counsel]. Did you use a placed in service date of 1997 for all of Laclede's real property?

[Maurer]. Not a year – by the way you're stating it, yes, but it's incorrect.

Q. Okay. What's incorrect about it?

A. That figure is – that year is – when it was cut off of the MACRS[10] schedule and also what they turned in, Laclede dropped – started dropping off in 1997. It should have continued down to 1950 on all of their stuff. They didn't do it so I can only go with what I've got from Laclede.

Q. So for a pipe with a vintage of 1960 –

A. It's included in that 1997. Laclede did that. 'Cause you'll notice it says 1997 or prior in their figures.

. . .

Q. And would that have resulted in a lower assessed value?

A. I'm sure it would.

While the initial information provided to the Assessor by Laclede failed to provide the vintage years for certain personal property such as pipelines that were placed in service before 1997, the record demonstrates that Laclede provided the Assessor with an amended list of property with the correct vintage years when Laclede became aware that the Assessor

---

[10] MACRS is the modified accelerated cost recovery system, which is a depreciation schedule contained in the Internal Revenue Code in 26 U.S.C. § 168 (2018). The Assessor, Koyama, and Reilly each used MACRS in calculating Laclede's depreciation, which is consistent with State Tax Commission Guidance. *See*, *Union Elec. Co. v. Adams*, 539 S.W.3d 779, 783 (Mo. App. E.D. 2017).

did not have the proper vintage years for all of its property. The Assessor, and the Assessor's experts failed to amend the valuation based on this information prior to the Board's hearing.

The Assessor admitted that she did not properly apply the depreciation schedule, even though she had the necessary information to properly make those calculations, and this resulted in a higher assessed value. This admission renders the Assessor's valuations unreasonable, and therefore the Board's adoption of those valuations unreasonable. "It is important for the assessor to arrive at a reasonable level of depreciation." *See Estes*, 534 S.W.3d at 358 (citing ASSESSOR MANUAL, VII-7.4-1 (Mo. State Tax Comm'n, Feb. 5, 2015)). On these specific facts, we find that the Board erred in sustaining the Assessor's initial valuation because the Assessor unreasonably failed to consider and properly calculate depreciation based on the vintage years of the property. Therefore, Laclede produced substantial and competent evidence from which the Commission could find the presumption that the Board's valuations are correct was rebutted.

This does not end the inquiry however, because Laclede not only has the burden to demonstrate the Board's valuations are incorrect, Laclede also has the burden to establish the value that should have been placed on the property. *Snider*, 156 S.W.3d at 346; *Tibbs v. Poplar Bluff Assocs. I, L.P.*, 599 S.W.3d 1, 7 (Mo. App. S.D. 2020).

13

**III. Laclede did not provide substantial and competent evidence to establish the TVM of its personal and real property because the Commission adopted Reilly's valuation, which incorporated the cost approach, the comparable sales approach, and the income approach.**

"Determining value is an issue of fact for the Commission[; h]owever, 'whether the appropriate standard of value and approach to valuation were properly applied under the particular facts and circumstances of the case is a question of law," which we review *de novo*. *Union Elec. Co. v. Adams*, 539 S.W.3d 779, 782 (Mo. App. E.D. 2017) ("*Adams*") (quoting *Aspenhof Corp. v. State Tax Comm'n*, 789 S.W.2d 867, 869 (Mo. App. E.D. 1990)). "For purposes of levying property taxes, the value of real property is typically determined using one or more of three generally accepted approaches." *Snider*, 156 S.W.3d at 346. "These three approaches include the cost approach, the comparable sales approach, and the income approach (also known as income capitalization)." *Tibbs*, 599 S.W.3d at 8 (citing *Snider*, 156 S.W.3d at 346-48; *Mo. Baptist Children's Home v. State Tax Comm'n.*, 867 S.W.2d 510, 511 n.3 (Mo. banc 1993)).

However, in 2013, the Commission mandated that assessors use the reproduction cost approach to value natural gas pipeline companies' real and personal property. *Estes*, 534 S.W.3d at 367; *Adams*, 539 S.W.3d at 783. Similarly, the Commission continued to mandate the use of the reproduction cost approach for tax years 2014 and 2015. *See Estes*, 534 S.W.3d at 358 (citing ASSESSOR MANUAL, VII-7.4-1 (Mo. State Tax Comm'n, Feb. 5, 2015)). Also, section 137.122 requires assessors to use the reproduction cost approach for business personal property in use after January 1, 2006. Consistent with *Estes* and *Adams*,

we hold that the Commission is obligated to use the reproduction cost approach in the instant case.[11]

In *Adams*, the assessor combined, "income, market, and cost 'new' approaches— every possibility *except* the original (historical) cost approach mandated by the Commission for the year in question" to calculate the value of a natural gas distribution company. 539 S.W.3d at 783. The court reversed and remanded the matter back to the Commission to apply the "proper methodology as prescribed by Commission publications in effect for the relevant period." *Id*. at 784. Similarly here, the Commission adopted Reilly's valuations, and because Reilly combined income, market, and cost approaches, we find the Commission failed to follow its own mandate. Therefore, we must reverse and remand for a determination of TVM by properly applying the reproduction cost approach as mandated by Commission publications for the 2014 and 2015 tax years.

Laclede further argues that this Court lacks authority to determine which approach the Commission should adopt. *See Hermel, Inc. v. State Tax Comm'n*, 564 S.W.2d 888, 896 (Mo. banc 1978) ("[I]t is not within the purview of this court to determine the method of valuation to be adopted by the commission"). But, in accord with *Hermel, Inc.*, we are not determining the method of valuation to be adopted by the Commission, instead we

---

[11] Laclede argues that the Commission did not require the reproduction cost approach method for public utility property citing a string of cases where alternative valuation methods were used. However, because these cases precede the Commission's 2013 mandate, we do not find them persuasive. *See Bussman Div. of Cooper Indus./McGraw Hill v. State Tax Comm'n*, 802 S.W.2d 543 (Mo. App. E.D. 1991) (1986 tax year); *Harrah's Md. Heights v. Zimmerman*, 2014 WL935759 (Mo. State Tax Comm'n) (2011 and 2012 tax years); *Doe Run Co. v. Holman*, 1999 WL1253948 (Mo. State Tax Comm'n) (1997 tax year).

15

merely hold that the Commission must follow the rules that it has adopted and use the reproduction cost approach.

Laclede also asserts the proper methodology is the Unit Value Method. *See Iron Mountain Trap Rock v. Ward*, 2015 WL7294788 (Mo. State Tax Comm'n) (approving use of the Unit Value Method to value a quarry). This is an issue that is best determined by the Commission. *Lebanon Props. I. v. North*, 66 S.W.3d 765, 767 (Mo. App. S.D. 2002) ("Ascertainment of proper methods of valuation is delegated to the [C]omission.") (citing *C & D Inv. Co. v. Bestor*, 624 S.W.2d 835, 838 (Mo. banc 1981)). Because the reproduction cost approach does not preclude the application of the Unit Value Method, we leave it to the Commission to determine whether the Unit Value Method is appropriate in this case and whether it has been properly applied.[12]

Furthermore, Laclede asserts that Koyama's methodology was fundamentally flawed rendering her report "unreliable and the valuations therein not indicative of the TVM of Laclede's property." Similarly, the Assessor argues that Reilly's methodology is not founded on reliable appraisal methods. Our Supreme Court "has acknowledged 'the wisdom of the General Assembly in providing an administrative agency to deal with this specialized field." *Savage v. State Tax Comm'n*, 722 S.W.2d 72, 75 (Mo. banc 1986) (internal quotation omitted). We are "loathe to substitute [our] judgment for the expertise of the Commission in matters of property tax assessment." *Id*. However, "[o]nce the commission decides to use a particular [valuation] approach, it must apply that approach

---

[12] We note that both Koyama and Reilly (in part) utilized the Unit Value Method combined with the cost approach in reaching their conclusions.

16

properly and consider all of the factors relevant to that approach." *Estes,* 534 S.W.3d at 370 (quoting *Snider,* 156 S.W.3d at, 348).

### Conclusion

The judgment of the circuit court affirming the Commission's Decision and Order is reversed. This matter is remanded to the Circuit Court of Clay County for remand to the Commission to calculate, in a manner consistent with this opinion, the TVM of Laclede's real and personal property in service in Clay County as of January 1, 2014 and January 1, 2015 through use of the reproduction cost approach.

Gary D. Witt, Judge

All concur